IN RE TRUSTEESHIP UNDER AGREEMENT WITH
WILLIS K. NASH.
ROBERT LAKE NASH v. EDGAR V. NASH AND OTHERS.

122 N. W. (2d) 104.

May 24, 1963—No. 38, 705.

---

*R. D. Peck,* for appellant.

*Cant, Haverstock, Beardsley, Gray & Plant* and *William J. Lockhart,* for respondents.

OTIS, JUSTICE.

This is an appeal from an order of the district court construing a trust instrument[1] to exclude an adopted child of the life tenant from sharing in the distribution to remaindermen. The facts are not in dispute. The only issue is the construction of the following language:

"* * * [T]he trustees agree to hold, * * * for the benefit of donor's son, Willis Vanderhoef Nash, the latter's daughters, Helen Lora Nash and Patricia Nash, *and any other issue of said son who may hereafter be born.*

"* * * At the death of said son, if he is survived by child or the issue of a deceased child, all the trust property * * * *shall be divided into as many equal funds as there may be children of said son surviving him,* * * *. Each of said funds shall then be held and managed separately for the respective beneficiaries; and the principal shall be distributed at the times and in the amounts following, to-wit:" (Italics supplied.)

At the time the trust was executed on August 5, 1939, settlor's son, Willis Vanderhoef Nash, was having marital difficulty which resulted in divorce. On April 8, 1958, he legally adopted two stepchildren of a third marriage, appellant, Robert Lake Nash, born after the creation of the trust, and Margaret Leann Nash, born prior thereto. Margaret predeceased Willis Vanderhoef, who died on July 24, 1961.

The trustees in their petition allege as follows:

"It is not clear from the trust instrument whether or not Robert Lake Nash as an adopted son of Willis Vanderhoef Nash is included as a child of said Willis Vanderhoef Nash for the purpose of dividing the trust estate into separate funds for the children of said Willis Vanderhoef Nash upon the latter's death."

---

[1] Minn. St. 501.35.

The petition concludes with a prayer for instructions as to whether the adopted child of Willis Vanderhoef Nash is included in the terms of the trust instrument.

The trial court held that in dividing and distributing the trust estate the trustees should construe the term "child" to exclude Robert Lake Nash. In a memorandum made a part of the order, the court based its decision on what appeared to it to be an intention to benefit only natural children because of the phrase "who may hereafter be born." The court felt it was significant that the instrument was executed during a period when the life tenant's marriage was unstable and that it indicated a purpose to exclude anyone who might be a stepchild by a subsequent marriage. In addition, the court pointed out the capricious and arbitrary result of construing the instrument to include appellant, born after the trust was created, but to exclude his sister who was born prior to it.[2]

As we view the issues, we must determine whether the testator's intention is made clear by the trust instrument and the circumstances surrounding its execution, and, if not, what principles of law apply as a matter of policy.

1. If testator has expressed any intention with respect to the inclusion or exclusion of adopted children it must be found in the two phrases, "any other issue of said son who may hereafter be born," and "all of the trust property * * * shall be divided into as many equal funds as there may be children of said son surviving him." At the time this trust was created the statute governing the effect of adoption, Mason St. 1927, § 8630, contained the following language:

"Upon adoption such child shall become the legal child of the persons adopting him, and they shall become his legal parents, with all the rights and duties between them of natural parents and legitimate child."[3]

---

[2]The rules governing the finality of the trial court's findings, promulgated in In re Estate of Kelly, 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268, are fully discussed and distinguished in a manner here applicable in In re Trust Under Will of Holden, 207 Minn. 211, 227, 291 N. W. 104, 112.

[3]The present statute, Minn. St. 259.29, contains that language and continues: "* * * By virtue of such adoption he shall inherit from his adoptive parents or their relatives the same as though he were the legitimate child of

Notwithstanding the statement of policy contained in that statute, the intention of a testator or settlor continues to govern the disposition of his estate if it can be discovered.[4] No case has been called to our attention in which the precise language of this trust has been construed. We have noted that every testator's circumstances and plan of disposition is unique, that "no will has a brother,"[5] and therefore precedents are of no great value.[6]

In the case of In re Trust Under Will of Holden, 207 Minn. 211, 291 N. W. 104, this court laid to rest the question of whether the word "issue" includes adopted children of a life tenant by holding that it did.[7] What remains to be resolved is whether settlor Willis K. Nash, whose trust was created prior to the Holden decision, indicated any different intention. The fact appellant was born after the creation of the trust is not in itself significant. If the settlor gave the matter any thought, it was

---

such parents, and in case of his death intestate the adoptive parents and their relatives shall inherit his estate as if they had been his natural parents and relatives in fact. After a decree of adoption is entered the natural parents of an adopted child shall be relieved of all parental responsibilities for such child, and they shall not exercise or have any rights over such adopted child or his property. The child shall not owe his natural parents or their relatives any legal duty nor shall he inherit from his natural parents or kindred. Notwithstanding any other provisions to the contrary in this section, the adoption of a child by his step-parent shall not in any way change the status of the relationship between the child and his natural parent who is the spouse of the petitioning step-parent."

[4] "The primary purpose of construction of a will is to ascertain the meaning and the intent of the testator." In re Trust Under Will of Holden, 207 Minn. 211, 215, 291 N. W. 104, 106. See, also, Oler, *Construction of Private Instruments Where Adopted Children are Concerned*, 43 Mich. L. Rev. 705, 732; In re Trusteeship Created by Fiske, 242 Minn. 452, 460, 65 N. W. (2d) 906, 910.

[5] In re Trust Under Will of Cosgrave, 225 Minn. 443, 459, 31 N. W. (2d) 20, 30, 1 A. L. R. (2d) 175; accord, Orme v. The Northern Trust Co. 25 Ill. (2d) 151, 162, 183 N. E. (2d) 505, 511.

[6] In re Trust Created by Will of Tuthill, 247 Minn. 122, 126, 76 N. W. (2d) 499, 502.

[7] See, Annotation, 86 A. L. R. (2d) 12. But see, Restatement, Property, § 292.

the relationship of parent and child, and not the date of birth, which presumably concerned him. The parties draw divergent inferences from the fact settlor had an adopted child of his own with whom he apparently enjoyed close family ties and for whom he made provision in his will.

The language of the trust instrument, which requires the estate to be divided into as many funds as there are children of the life tenant, lends support to appellant's position that no discrimination against adopted children was intended. We have indicated that, absent clear expression to the contrary, the word "children" includes adopted children.[8]

Respondents cite a number of cases from other jurisdictions which deserve comment.

In Third Nat. Bank & Trust Co. v. Davidson, 157 Ohio St. 355, 363, 105 N. E. (2d) 573, 577, the question was whether "grandchildren, * * * born prior or subsequent to" settlor's death, included adopted children. The court held that obviously no adoptee could at birth be settlor's grandchild and hence could not be included as a beneficiary. In reaching this result the court reversed the trial court and an intermediate appellate court and provoked a dissent from the chief justice, who felt the statute should be liberally construed to give equal status to adopted children.

Wachovia Bank & Trust Co. v. Green, 239 N. C. 612, 614, 80 S. E. (2d) 771, 773, construed an instrument making provision for "any child * * * hereafter born to either my said niece or my said nephew" to exclude adopted children. Whether or not we ultimately choose to follow Wachovia in a similar fact situation, we believe that the circumstances here present compel a finding that the expression "born to" distinguishes that case from this.

A case more nearly in point is Vaughn v. Vaughn, 161 Tex. 104, 337 S. W. (2d) 793. The settlor there provided that a trust should be established for any child of his son born after settlor's death. Again, both the trial court and an intermediate court were reversed. The Texas Supreme Court was of the opinion that since the trustees could not establish a trust as soon as an adopted child was born as required by the

---

[8] In re Trust Created by Will of Patrick, 259 Minn. 193, 195, 106 N. W. (2d) 888, 890. But see, Restatement, Property, § 287.

trust instrument, it was not settlor's intent to benefit a child born to a stranger. In addition, the settlor had specifically provided for adopted children by the terms of other trust instruments. The court relied for support on the Wachovia Bank and Davidson cases.[9]

Authority cited by respondents which limits beneficiaries to "issue of the body" clearly does not apply.

Taking the trust instrument by its four corners, and having in mind the extrinsic evidence of the circumstances which respondents contend prompted its execution, we are unable to find any persuasive motive or language which militates in favor of an intention to exclude from its benefits adopted children of the life tenant.

While it may be argued that settlor could have expressly included adopted children had it been his desire to provide for them, an equally valid argument may be advanced that he apparently entertained no aversion to adoption, since his own experience was successful, and it would have been a simple matter to restrict beneficiaries to blood relations had it been his purpose to do so.

In our opinion, the proof with respect to settlor's intent reposes on dead center. The circumstances are "neutral."[10] Neither party has succeeded in convincing us of what the settlor had in mind. The New York

---

[9]The Kansas court dealt with similar reasoning in Dreyer v. Schrick, 105 Kan. 495, 496, 185 P. 30, 31: "With respect to the claim of the adopted child to a share of the property derived by will, the argument on one side may be briefly summarized as follows: * * * She was not born to them, and consequently she cannot qualify under the provision in favor of after-born children. To permit her to do so would require an amendment of the statute, which the legislature has not seen fit to make. This icily logical argument, based on the letter of the law, which killeth, is supported by judicial decisions from several states * * *.

        *     *     *     *     *

"In this state adoption carries with it every feature of the domestic relation of parent and child, except natural parentage. * * * The reciprocal rights, duties, privileges, responsibilities and liabilities created are those of parent and child in fact, and statutes referring to the relationship, which do not clearly exclude adopted children, must be interpreted as including them on equal footing with natural children."

[10]In re Trust Under Will of Holden, 207 Minn. 211, 217, 291 N. W. 104, 107.

court, speaking through Mr. Justice Cardozo, addressed itself to a similar dilemma in New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93, 108, 142 N. E. 431, 434, 31 A. L. R. 791, 798, as follows:

"* * * The rule thus emerges that in the absence of clear tokens of a contrary intention, the statute is to be taken as the standard of division * * *. The acceptance of this formula supplies a test of simple application. A testator is still free, if he pleases, to direct division upon other lines. Often it will happen that he has no intention one way or the other. * * *

"* * * In all likelihood, he simply failed to think the subject through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law. The question in such circumstances is one not of intention in the proper sense, but of the legal implications of one formula or another."

2. Faced with the inconclusive evidence we find in this record, we feel compelled to resort to the presumption applied in In re Trust Created by Will of Patrick, 259 Minn. 193, 199, 106 N. W. (2d) 888, 892. Where a purpose to grant or withhold benefits with respect to adopted children is not clear, we hold that the settlor is presumed to intend that adopted children be included within the category of issue of a life tenant "who may hereafter be born." Stated differently, one who seeks to exclude adopted children from the benefits of such a trust has the burden of proving by a fair preponderance of the evidence that this was what settlor had in mind.[11]

---

[11]In Prince v. Nugent (R. I.) 172 A. (2d) 743, 753, the court observed:

"Where a settlor includes a gift to the lawful issue of an adoptive parent in a deed of trust, absent from such deed either an express or necessarily implied intent to exclude the adopted child, the use of such language in the limitation by the settlor constitutes prima facie evidence of his intent to include therein the adopted child. * * *

\* \* \* \* \*

"The respondents argue that had the legislature intended that the rule of construction be applicable to limitations which contain the word 'child' or 'issue,' it would have specifically so stated. It must be conceded that courts

The common law did not recognize adoption as a legal relationship, and a number of states reflect its traditional reluctance to accord strangers to the blood equal status with heirs of the body. However, it is clear that this state has by statute and judicial decision assumed a more liberal attitude. The forbearance, affection, and respect which characterize the relationship of a mutually devoted parent and child are fostered more by the intimate experiences of daily life which they share together than by the accident of common biological origin.[12]

We therefore conclude that settlor, Willis K. Nash, used no expression indicative of his attitude toward adopted children of his son, Willis Vanderhoef Nash. He very likely gave the matter no thought. The phrase "hereafter born" was obviously intended to include those who might become children of the life tenant before the termination of the trust. It does not, in our opinion, negative the possibility of adopted children. In dividing the trust for distribution to remaindermen, settlor designated them only as "children" of his son. We cannot assume he and his attorneys were wholly oblivious to the laws of adoption when they drafted the trust instrument.[13] Settlor having at most shown an

---

frequently rationalize in this manner when in construing enactments it appears that the legislature could, by so acting, have avoided the creation of a patent ambiguity in the legislation. However, it is neither the prerogative nor the duty of the courts, when construing legislation, to require the legislature to employ specific phraseology and on the basis of its failure to do so to judicially amend the statute." See, In re Trust Created by Will of Patrick, 259 Minn. 193, 196, 106 N. W. (2d) 888, 890.

[12]tenBroek, *California's Adoption Law and Programs*, 6 Hastings L. J. 261, 276.

[13]The California court has stated the matter well in Estate of Heard, 49 Cal. (2d) 514, 522, 319 P. (2d) 637, 642:

"* * * We cannot suppose that wills are made in a vacuum; that the status of an adopted child being the same as a biological offspring, which is the public policy of the state, may be completely ignored, or that it was ignored by a testator when making a will any more than he may be said to ignore many other rules of law and public policy. When he has not said anything about 'adopted' children using that word or the equivalent, the court in seeking his intent is in fact endeavoring to ascertain what his wishes would be if adopted children were called particularly to his mind. Lacking that, the court must assume, unless a contrary intent is expressed, that he intended

indifference to their effect, we are not prepared to say that considerations of public policy require us to find settlor entertained a conscious purpose to exclude adopted children. The reasoning and philosophy expressed by the legislature and the courts in this state require a contrary conclusion.

We therefore hold that Robert Lake Nash is by adoption the issue of Willis Vanderhoef Nash, entitled to share equally with Helen Nash Schermerhorn and Patricia Nash Carson in the distribution of the remainder interest of the trust created by Willis K. Nash on August 5, 1939.

Reversed.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

that his will would fit it and be compatible with the general body of the law and public policy. Otherwise the court is left with little if any basis for interpreting the instrument. Courts thus, by necessity, draw on the statutes, case law and public policy in construing an instrument as they must suppose that the draftsman did not intend to pursue a course contrary to them unless he so states. The draftsman of wills may exclude adopted persons if he wishes."

See, also, Note, 22 So. Calif. L. Rev. 89.