Hazel Barnes MOORE, now Crowson,
Plaintiff In Error,

v.

James Troy McALESTER, J. J. McAlester,
Rebecca McAlester Olinger, C. L. Priddy,
Executor of the Estate of Mary B. Mc-
Alester, deceased, Lura McAlester Phelps,
Jo Ann Capps, John F. Capps, Defendants
in Error.

No. 41673.

Supreme Court of Oklahoma.

April 25, 1967.

As Corrected May 11, 1967.

Stanley B. Catlett, Oklahoma City, Eugene N. Catlett, Houston, Tex., for plaintiff in error.

Charles B. Tucker, McAlester, for defendant in error, Rebecca McAlester Olinger.

Gotcher & Gotcher, James E. Gotcher, McAlester, for defendant in error, James T. McAlester.

Robert A. Layden, McAlester, for defendant in error C. L. Priddy, Executor of the Estate of Mary B. McAlester, Deceased.

George L. Hill, A. James Gordon, McAlester, for defendant in error Lura McAlester Phelps.

Arnote, Bratton & Allford, Walter J. Arnote, McAlester, for defendant in error James J. McAlester, Jr.

JACKSON, Chief Justice.

This is an appeal in a probate matter which involves a construction of the will of J. J. McAlester, deceased. A brief summary of the rather involved litigation preceding the appeal is necessary.

McAlester died in September, 1920, leaving surviving him a daughter and two sons, and his will was presented for probate in the County Court of Pittsburg County about a week later. Despite a contest filed by his daughter, Sudie, it was admitted to probate on November 3, 1920. W. B. McAlester, one of the sons, was named executor of the will, and in 1925, after a final report by him, the court rendered its Order Allowing Final Account, Determining Heirs and Distributees, Distributing Estate and Discharging Executor, from which no appeal was taken. In this Order, the court distributed two lots in McAlester, Oklahoma, to W. J. Horton as trustee, in accordance with the following portion of the will:

"ITEM SIX—I give, devise and bequeath to W. J. Horton of McAlester, Oklahoma, Trustee, Lots six (6) and seven (7) * * * The said W. J. Horton to take the possession, management and control of said property, lease the same, collect and receive the rents, issues and profits thereof, and * * * to pay the net proceeds to my said daughter, Sudie Barnes, quarterly in each year during her lifetime for her use and benefit; * * * and upon the death of my said daughter, Sudie Barnes, said lots six and seven * * * to go and belong to the *issue of her body* then living, if any, but if she leaves no issue, then to go and belong to my said sons, J. B. McAlester and W. B. McAlester, share and share alike." (Emphasis supplied.)

In 1928, "subsequent letters of administration" were granted upon a petition alleging that certain real property had been inadvertently omitted from the prior probate proceedings. After routine and uncontested proceedings, lasting only a few months, this property was distributed under the residuary clause of the will to the three children in equal shares, and the administrator was discharged.

During the 1930's, both J. B. McAlester and W. B. McAlester, the two sons, died. J. B. McAlester died testate, leaving surviving him his widow, Lura, a son, J. J., and a daughter Rebecca. The widow, Lura, was the residuary devisee under his will. W. B. McAlester died intestate, leaving surviving his widow, Mary B., a son, James T., and a daughter, Rebecca.

In 1959, Sudie Barnes died intestate and the trust created by Item Six of the will of her father, J. J. McAlester, came to an end as to her. She left an alleged adopted daughter, Hazel Barnes Crowson, as her only survivor. Mrs. Crowson is the plaintiff in error in the appeal now before us.

In 1960, William Jones, the successor of W. J. Horton as trustee for Sudie Barnes,

filed a petition in the county court reciting in effect that the trust created by Item Six had come to an end; that the trust property, with some accrued cash, remained in his possession; that it is "* * * proper that letters of administration with the will annexed should again be issued". A waiver of notice, signed by all of the heirs of J. J. McAlester, including Hazel Barnes Crowson, was presented with the petition, and Jones was thereafter appointed administrator with the will annexed. In due course Jones filed an accounting. Thereafter several of the heirs filed applications for determinations of heirship and distribution. On these pleadings, issue was joined on the proper construction of the portion of the will previously quoted herein, and also on the issue of fact as to whether Hazel Barnes Crowson had actually been adopted by Sudie Barnes and her husband after the death of the testator.

Hazel Barnes Crowson took the position that, despite the limitation to "* * * the issue *of her body* then living, if any, * * *" (emphasis supplied), the corpus of the trust estate descended to her as the adopted daughter of Sudie Barnes. The widows of the two sons took the position that the trust property descended to the Heirs of the sons, as a part of their respective estates. Lura McAlester Phelps, the widow of J. B. McAlester, claimed all of the one-half interest that would have gone to J. B. McAlester, as the residuary devisee under his will. Mary B. McAlester, the widow of W. B. McAlester, died after Sudie Barnes died, and is now represented in this case by the executor of her estate, who claims an undivided one-sixth of the trust estate, as the share of Mary B. McAlester under the laws of descent and distribution. Generally, the grandchildren take the position that since Sudie Barnes did not leave "issue of her body", the trust estate descended to the heirs *of the body* of the two sons, J. B. McAlester and W. B. McAlester. Under this view, the widows of the two sons would not participate in the distribution of the trust estate.

The order of the County Court was in general accordance with the theory of the grandchildren. Under this order, the trust estate was distributed one-fourth each to James T. McAlester and Rebecca McAlester Olinger (children of W. B. McAlester); one fourth to J. J. McAlester III, the son of J. B. McAlester; and the remaining one fourth in equal shares to the children of Rebecca McAlester Capps, a deceased daughter of J. B. McAlester.

This order was appealed to the district court where the matter was heard de novo. At the conclusion of the hearing the district court found as a fact that Hazel Barnes Crowson had been legally adopted. He also made the following findings:

"The court further finds that James J. McAlester was a man of extensive business and legislative experience. That he was aware of his family relationships, the number of his children, their ages and ages of their husbands or wives. In this regard he was aware at the time of executing his will that his daughter, Sudie Barnes' husband, Simpson H. Barnes, was fifty-nine (59) years of age.

"That because of his experience he was familiar with the meaning and legal significance of the expression "issue of her body" and intended to limit the devise of the trust property under consideration herein to the issue of her body which would exclude an adopted daughter."

He also concluded as a matter of law:

"That Sudie Barnes died without there being issue of her body and that the trust estate under consideration herein then went under the terms of the will to: J. B. McAlester and W. B. McAlester. That the said J. B. McAlester and W. B. McAlester predeceased Sudie Barnes and that the trust estate, on the failure of there being issue of Sudie Barnes' body at the time of her death, went one-half (½) to each of their respective estates."

In a subsequent Judgment and Decree, the court distributed the trust estate to the heirs of J. B. and W. B. McAlester, as follows: an undivided one-half interest to Lura Mc-

Alester Phelps, as the surviving widow and residuary devisee under the will of J. B. McAlester; and one-half to the heirs of W. B. McAlester, who died intestate.

Hazel Barnes Crowson and three of the grandchildren filed separate motions for new trial which were overruled, and gave notice of intention to appeal. The casemade was settled on September 13, 1965, and the petition in error of Hazel Barnes Crowson was filed in this court on September 15, 1965.

J. J. McAlester, grandson of the testator, died after the trial but before the appeal was begun in this court; his widow, Mary S. McAlester, was thereafter properly substituted as a party in his place. On October 14, 1965, Mary S. McAlester filed a cross petition in error. Thereafter Lura McAlester Phelps, a co-defendant in error, filed a motion to dismiss the cross petition in error of Mary S. McAlester, as having been filed more than 20 days after the casemade was settled.

■ 12 O.S.Supp.1963, Sec. 972(a) provides that *all* proceedings by casemade for reversing, vacating or modifying judgments shall be commenced within twenty days from the date the casemade is settled. For this reason this court does not have jurisdiction to consider the cross petition in error of Mary S. McAlester, and it is accordingly dismissed. Allison v. Allen, Okl., 326 P.2d 1059; Video Independent Theatres, Inc. v. Walker, Okl., 308 P.2d 958.

Cross petitions in error were also filed by James Troy McAlester and Rebecca McAlester Olinger more than 20 days after the casemade was settled. Although they are not mentioned in the motion of Lura McAlester Phelps, 12 O.S.1963 Supp., Sec. 972 (c) requires that they be dismissed as inadvertently received, with or without a motion. The cross petitions in error of James Troy McAlester and Rebecca McAlester Olinger are therefore also dismissed.

It should perhaps be noted that at the time this appeal was lodged in this court (Sept. 15, 1965), under our holding in DeWees v. Cedarbaum, Okl., 381 P.2d 830, it was pos-

sible for parties desiring to appeal to obtain an extension of the 20 day period after settlement of the casemade within which the proceedings in error in this court were required to be instituted. No proceedings for such an extension, either prospective or retroactive, were had in the case now before us. Our holding in DeWees v. Cedarbaum was based in substantial part upon language in 12 O.S.1961, Sec. 962(a), giving the trial court power to " * * * make orders extending the time for * * * *the filing of the proceedings in error* * * * " (emphasis supplied). In 1965, the Legislature in effect "overruled" DeWees v. Cedarbaum in that respect by removing the emphasized language from Section 962. See 12 O.S.1965 Supp., Sec. 962(a).

It should also be noted that 12 O.S.1965 Supp., Sections 988 and 989, which provide that under certain circumstances some errors in perfecting an appeal may be waived, did not become effective until October 20, 1965.

We now consider the arguments made in the brief of plaintiff in error Hazel Barnes Crowson.

The first proposition consists of arguments in support of the trial court's finding that she was in fact the legally adopted daughter of Sudie Barnes. In view of the conclusions reached hereinafter, this question is immaterial.

The second is to the effect that because of the enactment in Oklahoma of the Uniform Adoption Act in 1957, 2 years before the death of Sudie Barnes, Hazel Barnes Crowson is, as a matter of law, a "child" of Sudie Barnes and entitled to inherit the trust estate in spite of the testator's use of the phrase "issue of her body."

It may be conceded that, for purposes of intestate succession, the Uniform Adoption Act has the effect of placing adopted children upon generally the same footing as natural children. See the third paragraph of the court's syllabus in Conville v. Bakke, Okl., 400 P.2d 179, cited by plaintiff in error. In that case, the testator had made certain dispositions of property to "the heirs

of the father of my wife" and to "the heirs of my father". The question presented was whether an adopted daughter of testator, and two adopted nieces of testator, were within the classes described. After a discussion of the Uniform Adoption Act, this court concluded that they were, no doubt because of the last sentence of 10 O.S.1961, Sec. 60.16, which is as follows:

" * * * From the date of the final decree of adoption, the child shall be entitled to inherit real and personal property from and through the adoptive parents *in accordance with the statutes of descent and distribution,* and the adoptive parents shall be entitled to inherit real and personal property from and through the child in accordance with said statute." (Emphasis supplied.)

Prior to the enactment of this portion of the Uniform Adoption Act, in 1957, the applicable law, 10 O.S.1951, Sec. 52, provided that an adopted child " * * * shall not be capable of taking property * * * from the lineal or collateral kindred of such parents by right of representation".

Thus, the holding of this court in Conville v. Bakke, supra, was merely that adopted children are "heirs" within the meaning of the Uniform Adoption Act and our statutes of descent and distribution. If, in the case now before us, J. J. McAlester had provided in his will that upon the death of Sudie Barnes the trust property was to go to her *heirs* then living, our holding in the Conville case would be determinative in this one. Of course such is not the case.

Plaintiff in error cites several cases from other jurisdictions, all of which may be distinguished in generally the same way. Major v. Kammer, Ky., 258 S.W.2d 506, involved a devise to certain "heirs at law". In re Heard's Estate, 49 Cal.2d 514, 319 P.2d 637, involved devises and bequests to "lawful issue"; Breckinridge et al. v. Skillman's Trustee, Ky., 330 S.W.2d 726, involved a devise to "his issue". Edmands v. Tice, Ky., 324 S.W.2d 491, involved a devise to "her children, if any". In all of those cases, the question was whether adopted children were included within the classes described. They are not authority for the proposition that, in Oklahoma, because of the Uniform Adoption Act, the phrase "issue of her body", used in a will executed in 1918, necessarily includes children thereafter adopted by the person concerned.

The precise argument of plaintiff in error, as we understand it, in connection with the Uniform Adoption Act, is as follows: (1) by the terms of Item Six—("to the issue of her body then living")—the question of who took the trust estate upon the death of Sudie Barnes was to be determined as of the date of her death, and not as of the date of the death of testator; (2) since the Uniform Adoption Act was enacted in Oklahoma before the death of Sudie Barnes, the quoted language from Sec. 60.16 must be considered in answering the question; (3) Section 60.16 reflects a legislative policy of "placing adopted children on a level with natural born offspring"; (4) therefore, the phrase "issue of her body" in Item Six must be construed to mean "child or children" of Sudie Barnes, which phrase would include Hazel Barnes Crowson even though she is an adopted child.

We are unable to agree with (4) above. We find in Sec. 60.16 no legislative purpose to change the rules for the construction or interpretation of wills. Said section in effect provides only that adopted children shall inherit property from and through the adoptive parents under the laws of descents and distribution the same as natural born children. It does not provide that adopted children *must* inherit even though a will plainly shows a contrary intention.

■ The phrase "issue of her body" has a clear and well defined meaning. It is not ambiguous or doubtful. It is such a phrase as is customarily used (as distinguished from the word "issue") for one purpose and one purpose only—to exclude adopted children from the class described. It is not suggested that other parts of the will require a different meaning, or that the testator was not aware of the true meaning of the phrase.

We hold that Hazel Barnes Crowson, being an adopted child, was not entitled to take the trust estate upon the death of Sudie Barnes.

In an alternative proposition, Mrs. Crowson argues that since J. D. McAlester and W. B. McAlester both died before Sudie Barnes, the devises to them lapsed and the trust estate, upon the death of Sudie Barnes without issue of her body, descended under the residuary clause of the will to the successors in interest of the three children. Under this view, Hazel Barnes Crowson, as the sole survivor of Sudie Barnes, would take an undivided one-third interest.

We are unable to agree that, merely because J. B. McAlester and W. B. McAlester died before Sudie Barnes, the devises to them lapsed. They were living at the time on the death of the testator, and 84 O.S. 1961, Sec. 142, cited by a defendant in error, is therefore not applicable.

Plaintiff in error cites In re He-ah-to-me's Estate, Okl., 325 P.2d 746, in support of the argument that because J. B. and W. B. McAlester died before Sudie Barnes, the devises to them lapsed. However, that case does not so hold. There, the will concerned left a *life estate only* to the contingent beneficiaries, with other provisions as to its disposition if they should die without issue. This feature is made clear in the court's syllabus number one.

It is clear that the remainder to J. B. and W. B. McAlester was an alternative contingent remainder. 33 Am.Jur. Life Estates, Remainders, Etc., Sec. 85. Contingent remainders are generally divided into two classes: those where the uncertainty or contingency is as to the persons to take, and those where the uncertainty is as to the event on which the remainder is to take effect. 33 Am.Jur. Life Estates, Remainders, Etc., Sec. 74. Here, the persons to take are definitely identified by name (J. B. and W. B. McAlester) and only the event itself was uncertain (the death of Sudie Barnes without issue of her body). The general rule is that where the uncertainty is as to the event, and the persons are ascertained, there is a vested interest in a contingent remainder which is alienable, 33 Am.Jur. Life Estates, Remainders, Etc., Sec. 150; 31 C.J.S. Estates § 88(c), and contingent remainders to definitely ascertained persons are devisable, 33 Am.Jur. Life Estates, Remainders, Etc., Sec. 153, 94 C.J.S. Wills § 85(b).

Therefore, at the death of the testator in 1920, J. B. and W. B. McAlester each took a vested interest in a contingent remainder which was not divested by their subsequent deaths before the death of Sudie Barnes. Since J. B. McAlester died testate, his interest was properly distributed to the residuary devisee under his will, his widow; and since W. B. McAlester died intestate, his interest was properly distributed to his heirs, his widow, his son, and the children of his deceased daughter.

As heretofore noted, some of the grandchildren of the testator took the position that it was the testator's intention that in case of the death of J. B. and W. B. McAlester before the death of Sudie Barnes, their interests should descend to the heirs *of their bodies*. This argument is untenable. There is no language in Item Six, or anywhere else in the will, to indicate such an intention, and the fact, as urged by these grandchildren, that most of testator's property was so devised as to go to his "blood heirs" is not persuasive. Since 84 O.S.1961, Sec. 142 is not applicable under the facts in this case, the devise to J. B. and W. B. McAlester was plainly a devise of a contingent remainder, with no restriction upon alienation or descent.

The judgment of the trial court is affirmed.

All the Justices concur.