# IN RE TRUSTS CREATED BY AGREEMENT WITH CHARLES M. HARRINGTON AND UNDER HIS LAST WILL AND TESTAMENT.

250 N. W. 2d 163.

January 7, 1977—Nos. 45707, 45708, 45709, 45710, 45711, 45712, 45713, 45714.

*Gray, Plant, Mooty & Anderson, Kenneth M. Anderson, Larry R. Henneman,* and *Richard A. Moore, Jr.,* for appellants.

*Henson & Tully, Robert F. Henson,* and *Joseph T. Dixon, Jr.,* for respondent charitable beneficiaries.

*Faegre & Benson, John E. Harris,* and *Richard Ihrig,* for respondent bank.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Solicitor General, and *Stephen F. Befort,* Special Assistant Attorney General, for respondent attorney general.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Appellants, who are the adopted children of trustor's natural daughter, appeal from an order of the district court denying them benefits of certain trusts. We reverse.

On March 23, 1923, Charles M. Harrington (hereinafter trustor) created several testamentary trusts vesting after the death of his daughter, Laura Belle Hudson, life estates in income in *"the child or children of my said daughter, the issue of her body,* until the death of such child or of the last survivor of such children in being at the time of my decease, and, if any shall be born after my decease, for an additional period of twenty-one (21) years after the death of said last survivor if any such child or children survive so long; and that, finally, after the respective deaths of said beneficiaries, first above named, a part—and, upon the expiration of the period limited for the payments *to the children of my daughter, the issue of her body,* the whole—of said income shall be paid to the various religious, educational, charitable and philanthropic institutions named * * *." (Italics supplied.) The underscored phrases appear throughout the trusts involved herein with slight variations, e. g.:

1. "her children, the issue of her body"
2. "if any child or children of her body survive her"
3. "her surviving child or children, if any, issue of her body"
4. "child or children of said LAURA BELLE HUDSON, the issue of her body"

Laura Belle Hudson was the natural and only daughter of trustor.

In September 1926 Katherine Dodge Andrews, who is one of the appellants here, and her brother, Edwin Dodge, whose heirs are among the appellants here, came to live with Laura Belle Hudson and her husband. Their natural mother had recently died and their natural father was crippled as a result of a stroke and was living in a nursing home. Katherine was 17 at the time, and Edwin was 18. Both children continued to live with the Hudsons, except for periods of absence while attending college, until their respective marriages.

Both children had occasion to meet and become acquainted with trustor during the time they lived in the Hudson household. The only evidence of the relationship between the two children and trustor was that it was a warm and friendly one. Trustor had made small gifts to Katherine on birthdays and other occasions and sent her fruit while she was away at college. Trustor, however, made no specific provisions for the children in his will or any other trust, and the will and trusts, at least in so far as relevant here, remained unchanged until his death.

Trustor died on March 27, 1928. Thereafter, on February 6, 1933, Katherine and Edwin Dodge were formally adopted by the Hudsons. Both Katherine and Edwin were adults in their middle twenties at the time of the adoption.

Katherine Dodge Andrews and Edwin Dodge (through his heirs) claim trust income as adopted children of Laura Belle Hudson. The remaindermen-charities resist their claim. The trial court held that the phrase "issue of her body" limited "child or children" to natural-born children of Laura Belle Hudson, and excluded the claimants. They appeal from an order to that effect. A single issue is dispositive of the appeal: Does the language of the trusts in question evince trustor's intent to include only natural children of Laura Belle Hudson and not her adopted children?

The citadel of will and trust construction, before which all other rules of construction must bow, is the elusive "intent of the trustor or testator." Lichter v. Bletcher, 266 Minn. 326, 123

N. W. 2d 612 (1963) ; In re Trusteeship Under Agreement with Mayo, 259 Minn. 91, 105 N. W. 2d 900 (1960) ; In re Trusteeship Under Will of Schmidt, 256 Minn. 64, 97 N. W. 2d 441 (1959) ; In re Trusteeship Created Under Will of Ordean, 195 Minn. 120, 261 N. W. 706 (1935) ; 20 Dunnell, Dig. (3 ed.) § 10257; 4 Bowe —Parker; Page on Wills, § 30.6. The problem is that, as far as we can determine, this trustor had no intent at all regarding inclusion or exclusion of adopted children in respect to their eligibility to share in the income from the trust. When trustor executed his will and the other trusts, his daughter was capable of bearing children, but had not done so. While trustor knew and had a good relationship with her later-adopted children, he had drafted the will and trusts in 1923, before the children came to live with his daughter in 1926, and made no attempt to change them before his death in 1928. There is no indication as to what his reaction to their adoption by his daughter, as opposed to their merely living with her until they became independent, would have been. Likewise, there is no indication as to how he would have provided for such children in his estate plan.

Appellants argue that this court has taken a position in favor of including adopted children in trust and will provisions based on the strong policy in favor of such children embodied in Minn. St. 259.29, which has existed essentially unchanged in Minnesota since 1905. The critical phrase in the predecessor of that statute as it read in 1905, and in 1923, at the time of the execution of these trusts, is: "* * * By virtue of such adoption, he [the adopted child] shall inherit from his adopting parents or *their relatives* the same as though he were the legitimate child of such parents * * *." (Italics supplied.) R.L. 1905, § 3616; G. S. 1923, § 8630. Essentially the same language appears in Minn. St. 259.29.

The first major case interpreting the statute was In re Trust Under Will of Holden, 207 Minn. 211, 291 N. W. 104 (1940). In Holden there was a double adoption—testatrix adopted Paul Holden, and he and his wife in turn adopted a son. Testatrix

made her will in 1925 and died in 1926, leaving a life estate in trust income to Paul Holden with the trust to terminate on his death and one-third of the principal to go on termination "to the lawful issue of my said adopted son, taking by right of representation * * *."

In the Holden case the surrounding circumstances and context of the term "lawful issue" were neutral, as is the term "issue of her body" in the instant case. In such an instance, "[t]he question * * * is not so much one of true intention as legal implications from the language." 207 Minn. 216, 291 N. W. 107. The trial court concluded that a testator is presumed not to include adopted children by a provision in the will for another's lawful issue, especially where the adoption takes place after the testator's death. On appeal, we reversed the trial court and stated:

"We believe that on principle the word 'issue' in a testamentary provision should be construed to include adopted children in virtue of our statutes [defining adoption and 'issue'] where a contrary intention is not shown. Whatever the holding, it results from the [legal] implications of the language of the will." 207 Minn. 227, 291 N. W. 111.

We also said:

"The [adoption] statute gives to an adopted child the status of a child of the body of the adoptive parent and extends the relation to the heirs and next of kin. The artificial relation is given the same effect as the natural one. The adopted child is a lineal descendant * * *; and heir at law * * *; and the next of kin of his adoptive parents * * *. Thus, the expression 'issue' or 'lawful issue' has a technical meaning under our statutes and decisions which comprehends an adopted child." 207 Minn. 216, 291 N. W. 107.

While a trustor or testator may in some instances exclude adopted children with language less direct than "I exclude adopted children," the presumption in Minnesota at the time these trusts were drafted was, and still is, that adopted children

will inherit from kindred of their adopted parents. The fact that trustor here used the term "issue of the body" rather than "lawful issue" is too slender a reed to outweigh that presumption.[1]

The next major case involving Minnesota's policy favoring adopted children was In re Trust Created by Will of Patrick, 259 Minn. 193, 106 N. W. 2d 888 (1960). Testator, who executed his will in 1940 and died in 1949, left the residue of his estate to his wife and upon her death to his stepdaugher and siblings, if then living, and, if not, to their respective "descendants." The de facto adopted child of testator's brother was held included. The court commented:

"It has been said that in the construction of wills every testator is presumed to know the law. This is an obvious legal fiction although it may express a practical working rule. It would be more accurate to say that the words of a will should be construed in accordance with precedents and statutes unless it is established by preponderance of evidence that a testator intended some other meaning.

"In this state adopted children stand in the same position as biological children in all respects, including their right to inherit by laws of intestacy or under appropriate testamentary provisions. By such legal policy, the terms 'children' and 'issue' are presumed to include both biological and adopted offspring. Likewise, in the modern view, the term 'descendants' prima facie includes adopted as well as biological offspring.

---

[1] Moore v. McAlester, 428 P. 2d 266 (Okla. 1967), interpreted the phrase "issue of her body" to exclude adopted children. The district court had found that the testator had intended to limit the devise of the trust property to the issue of his daughter's body, which would exclude an adopted child of the daughter. The Oklahoma Supreme Court stated that "[i]t is not suggested that other parts of the will require a different meaning, or that the testator was not aware of the true meaning of the phrase." 428 P. 2d 270. As previously stated, as far as we can determine, this trustor had no intent at all regarding inclusion or exclusion of adopted children.

"This is not the general, or perhaps even the majority, view. However, it is based upon humane and compassionate considerations which are appropriate to the attitudes of a modern civilized society, and which are expressed in our statutes on this subject. We have come to realize that it is not the biological act of begetting offspring—which is done even by animals without any family ties—but the emotional and spiritual experience of living together that creates a family. The family relationship is created far more by love, understanding, and mutual recognition of reciprocal duties and bonds, than by physical genesis. The marriage ceremony gives recognition to this fact as between spouses. Formal adoption recognizes this fact as between parents and children." 259 Minn. 195, 106 N. W. 2d 890.

The final major case in which this court considered Minnesota's policy favoring adopted children was In re Trust Under Agreement with Nash, 265 Minn. 412, 122 N. W. 2d 104 (1963). The trust language at issue was, "and any other issue of said son who may hereafter be born," and the later used phrase "children of said son." The trust was executed in 1939. The court commented:

"* * * The fact appellant [the adopted child] was born after the creation of the trust is not in itself significant. If the settlor gave the matter any thought, it was the relationship of parent and child, and not the date of birth, which presumably concerned him. The parties draw divergent inferences from the fact settlor had an adopted child of his own with whom he apparently enjoyed close family ties and for whom he made provision in his will.

"The language of the trust instrument, which requires the estate to be divided into as many funds as there are children of the life tenant, lends support to appellant's position that no discrimination against adopted children was intended. We have indicated that, absent clear expression to the contrary, the word 'chil-

dren' includes adopted children. [Citing In re Trust Created by Will of Patrick, *supra.*]" 265 Minn. 415, 122 N. W. 2d 107.

The court also noted: "Authority cited by respondents which limits beneficiaries to 'issue of the body' clearly does not apply." 265 Minn. 417, 122 N. W. 108.

From the above cases we glean two propositions: (1) Because of the policy embodied in our adoption statute, adopted children will be presumed included in a will or trust provision unless there is evidence of an intent to exclude such children; (2) such evidence may be found in the language of the will itself.

Applying these propositions to the instant case, we find that the language of these trusts does not evince an intent to include only natural born children of Laura Belle Hudson. Given the judicial history of the rights of adopted children, the use of the term "issue of her body" without further elaboration is not sufficiently explicit to exclude an adopted child from the benefits of this trust. To hold otherwise would cast a cloud over this state's policy toward adopted children and add to the reports another mindless case based on sham "intent" manifested in virtually meaningless common-law phrases. This trustor, we believe, had no intent at all regarding inclusion or exclusion of adopted children. In such a case, a strong public policy provides a better reason for decision than an old common-law phrase.

As a final note, we cite an article by Halbach, *The Rights of Adopted Children Under Class Gifts,* 50 Iowa Law Review 971, 980, in which the author states:

"It may be argued that, if the rules of construction are changed to presume inclusion of adoptees, draftsmen should have some terms of art such as those for confining gifts to blood descendants without having to belabor this choice on the face of an instrument which will become a matter of public record. *It may also be doubted, however, that the use of such terms by a draftsman is likely to be the result of anything more than drafting habit, quite independent of any conscious design re-*

*lating to the rights of adoptees. If there is to be a strong policy in favor of treating adoptees as if they were naturally born into the adoptive family, the draftsman's selection of these terms may be so much a fortuity as to justify its being disregarded for this purpose. It is not too much to ask the draftsman to address himself specifically and unambiguously to this question before finding that the exclusion of an adoptee is intended."* (Italics supplied.)

Adopted children are conclusively presumed to have the same rights as any other children under a will or similar document, unless adopted children are explicitly excluded by the testator.

Respondents also raise the issue of whether the period of time for which the income interests were to be paid has expired. We decline to rule on this issue because it was not adequately presented to the court below.

Reversed.

KELLY, JUSTICE (dissenting).

I respectfully dissent.

I find in the language of the instruments at issue sufficient evidence that the testator did not contemplate or reasonably expect the inclusion of adopted children. I am convinced that almost any layman would conclude that the language used in these trusts would exclude adopted children. Two portions of the will are particularly relevant. Paragraph 13 of the will provides in relevant part:

"* * * [A]fter the death of my daughter, a part of said net income shall be paid to the child or children of my said daughter, issue of her body, until the death of such child or of the last survivor of such children in being at the time of my decease, and, *if any be born after my decease,* for an additional period of twenty-one (21) years after the death of said last survivor if any such child or children survive so long; and that, finally, after the respective deaths of said beneficiaries, first above named,

a part—and, upon the expiration of the period limited for the payments to *the children of my daughter, the issue of her body,* the whole—of said income shall be paid to the various religious, educational, charitable and philanthropic institutions named in paragraphs Fourteen, Fifteen and Seventeen of this will, to provide, in perpetuity, for the assistance and maintenance of the work and purposes for which they are respectively authorized to undertake and carry on." (Italics supplied.)

Paragraph 14, item 2, of the will provides, in pertinent part:

"Of said principal of said Trust Estate, I direct that the net income of one hundred thousand dollars ($100,000.00) thereof shall be paid by said Trustee to my daughter, LAURA BELLE HUDSON, so long as she shall live, and, upon her death, that said income shall be paid by said Trustee *to her children, the issue of her body, until the death of the last survivor of said children in being at the time of my decease, and, if any children be born to my said daughter after my decease,* then, for the further period of twenty-one (21) years after the death of said last survivor, if any *such after-born child or children* shall live so long. Upon the death of the last survivor of all said children, or at the expiration of twenty-one (21) years from and after the death of the last survivor of said children in being at the time of my decease, said net income shall be paid by said trustee to [charitable beneficiary]." (Italics supplied.)

These elaborate provisions appear in substance throughout the will and trusts.

The language of the will and trusts, including the language set forth above, contemplates a single class of child beneficiaries who are carefully and continually described throughout as the issue of the body of Laura Belle Hudson.

I find that the language of these trusts, including the careful and consistent references to "issue of her body"[1] as well as ref-

---

[1] While I am reluctant to rely on the case law of other jurisdictions because of the unique strength of the Minnesota policy in favor of

erences in context to children born to Laura Belle Hudson and children in being, evinces an intent to include only natural-born children of Laura Belle Hudson.[2]

The net result of the majority opinion is that beneficiaries in trusts similar to the ones here in question are in effect given a power of appointment. That power may be exercised by the simple expedient of adopting adults as in the present case. Such adoptive adults might include in-laws, friends, or even persons that the trustor would under no circumstances want as beneficiaries. It should be pointed out that the trustor in this case knew appellants and had he desired that they participate in the trusts, he could have made them contingent beneficiaries. Similarly, if he wanted his daughter to have a power of appointment, he could have so provided. While I personally favor adoptive children being treated equally with "issue of the body," I think the trustor should make that decision and that in this case it is clear that he did intend to exclude adopted children.

It should be noted that this case presents a further question which this court is not passing on because the trial court held that all private interests in the trusts terminated on the death of Laura Belle Hudson. This decision rendered moot the question of the duration of the trusts. Because the Dodge adult adoptees

adopted children, one case cited by the parties seems relevant. Although Oklahoma has enacted the Uniform Adoption Act, which includes a liberal provision in favor of adopted children, the Oklahoma Supreme Court nonetheless held that the adopted child of testator's daughter was not "issue of her body." Moore v. McAlester, 428 P. 2d 266 (Okla. 1967). The court commented: "The phrase 'issue of her body' has a clear and well defined meaning. It is not ambiguous or doubtful. It is such a phrase as is customarily used (as distinguished from the word 'issue') for one purpose and one purpose only—to exclude adopted children from the class described." 428 P. 2d 270.

[2] Appellant would have this court disregard the "issue of her body" language as mere surplusage, by analogy to the trustor's use of "my beloved" to refer to his daughter, Laura Belle Hudson. I would reject any such analogy.

were neither "children" in being at the time of trustor's death nor born thereafter, some "rewriting" of the will by a court will be necessary to conclude that the trusts extend beyond Laura Belle Hudson's death. Some of that language is as follows:

"* * * [S]aid net income shall be paid by said Trustee to the children of my said daughter, the issue of her body, until the death of the *last survivor of said children in being at the time of my decease,* and, if any children be born to my said daughter after my decease, then for the further period of twenty-one (21) years *after the death of said last survivor,* if any after-born child or children shall live so long. Upon the death of the *last survivor* of all said children, *or at the expiration of twenty-one (21) years from and after the death of the last survivor of said children in being at the time of my decease,* said net income shall be paid [to a named charity]." (Italics supplied.)

This portion of the will was no doubt intended to preclude any conflict with the rule against perpetuities. It also had another function—that of determining when the trust would terminate in relation to the non-charitable beneficiary and when the charity would become entitled to the net income from the trust. It seems obvious that neither the scrivener nor the testator contemplated that adopted children would be included under the phrase "the issue of her body."

I would affirm the trial court's decision.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Kelly.