In the Matter of the TRUST CREATED UNDER AGREEMENT WITH George B. LANE, dated December 30, 1935.

In the Matter of the Trust for the Benefit of George Lane Barbour Under Article V. of the Will of George B. Lane.

In the Matter of the Trust Created Under Agreement with Nellie S. Lane, dated December 30, 1935.

In the Matter of the Trust of Gwenyth Barbour DeWitt Under Articles V. and VII. Of the Will of Lewis W. Barbour.

No. C6–02–1789.

Court of Appeals of Minnesota.

April 29, 2003.

Robert A. LaFleur, Jeffrey D. Bores, Becky L. Erickson, Chestnut & Cambronne, P.A., Minneapolis, MN, for appellants Jeffrey Hale Barbour and Pamela Miller.

Mary R. Vasaly, Margaret A. Garvin, Maslon Edelman Borman & Brand, Minneapolis, MN, for respondents George L. Barbour and Charles B. DeWitt.

R. Thomas Greene, Jr., James D. Lamm, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, for Trustee U.S. Bank National Association.

William J. Berens, Christopher T. Shaheen, Dorsey & Whitney, LLP, Minneapolis, MN, for John Gottsleben.

Considered and decided by WILLIS, Presiding Judge, SCHUMACHER, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

In this probate proceeding, appellants contest the district court's determination that respondent was eligible to benefit from a testamentary trust. Appellants argue that the district court erred in (1) finding that respondent, whose mother was explicitly excluded from the trust, was a beneficiary of the trust by virtue of his adult adoption by his uncle and (2) denying the trustee's petition to investigate the circumstances surrounding respondent's adoption. We affirm.

## FACTS

George B. Lane was the founder of a company that through a series of mergers became known as Lane, Piper and Jaffray. He married Nellie Lane, and although the couple did not have any biological children, they adopted Nellie's adult brother, Lewis Barbour. Lewis, the couple's only child, received large portions of their estate.

In the mid 1930's the Lanes created a series of trusts for the benefit of Lewis and his two sons, Henry and George Barbour. The trusts provided Lewis with a lifetime income and, upon his death, divided the bulk of the estate into two equal shares for Henry and George and created

a class gift for their "issue." The power of appointment for Henry, Lewis and George was limited to their relatives, surviving spouses and descendents of spouses.

The trusts did not, however, provide for Lewis' only daughter Gwenyth. Instead, George Lane's will states:

> I have made no provisions in this instrument for my grand-daughter Gwenyth Barbour, daughter of my son, Lewis W. Barbour, anticipating that he will himself make such provision for her as he deems just and proper.

Lewis did create a trust for Gwenyth that provided her with a lifetime income that upon her death was to be divided equally among her children, kept in trust for those children and distributed at age 50.[1]

Henry had two children during his first marriage: Jeffery and Pamela. When Henry remarried, he adopted his new wife's adult son, John Gottsleben. In 1988, the district court found Gottsleben to be Lewis' grandchild and thus eligible to benefit from the trust. Respondent asserts that there has never been an investigation into the circumstances of Gottsleben's adoption.

Gwenyth had only one child—Charles DeWitt. George never married and has no natural children. In 1993, in an adult adoption proceeding in California, George adopted his nephew, Charles DeWitt. The adoption decree provides that DeWitt shall be "regarded and treated in all respects as the lawful child [of George Barbour's]." The parties agree that the following diagram accurately depicts the Lane family tree.

## Lane Family Tree

(Dash indicates adoptions).

In October 2000, the trustee filed a petition with the Minnesota district court seeking, among other things, permission to investigate DeWitt's status as a potential beneficiary as George's adopted son.

Henry's two children by his first marriage, Jeffery and Pamela, supported the petition.

In June 2001 the district court concluded that DeWitt is George's son and was therefore a beneficiary of the trust, and

---

1. This trust was made up of half of the assets Lewis had a limited power to distribute. The other half of the assets would pass on to Henry and George Barbour upon Lewis' death.

that there was no need to investigate De-Witt's status. The district court based its decision on (1) Minnesota's presumption that adopted persons are treated the same as natural children for inheritance purposes is "extremely strong" and nearly "impossible to overcome" (2) the Lane's wills and trusts state on multiple occasions that adopted children are eligible to be beneficiaries; (3) the fact that Nellie was adopted and the Lane's adopted her brother when he was an adult; (4) Gwenyth's exclusion was immaterial; (5) language in the trust instrument anticipated that Gwenyth "and possibly her issue" would be provided for by Lewis indicating that the Lanes did not intend to completely exclude her. This appeal followed.

## ISSUES

I. Did the district court err in concluding that respondent was eligible under the terms of a testamentary trust to take as his uncle's heir following his adult adoption by his uncle despite the explicit exclusion of respondent's mother?

II. Did the district court err in refusing to allow the trustees to investigate the circumstances and purpose of Charles DeWitt's adoption?

## ANALYSIS

### I

■ Appellants first argue that the district court erred by concluding that DeWitt is entitled to benefit from the Lanes' trust. At the heart of appellants' argument is the theory that because DeWitt's mother was intentionally excluded, the Lanes therefore wanted to exclude her children as well and thus DeWitt should not be allowed to receive any benefits from the trust. Appellants contend allowing DeWitt to benefit from the trust, as

George's heir by adoption, would thwart the Lanes' intent.

■ "The citadel of will and trust construction, before which all other rules of construction must bow, is the elusive 'intent of the trustor or testator.'" *In re Harrington*, 311 Minn. 403, 405, 250 N.W.2d 163, 165 (1977 (quotation omitted)). When construing a testamentary trust this court's "primary concern is to give effect to the testator's intent as expressed in the plain language of the will." *In re Kischel*, 299 N.W.2d 920, 923 (Minn. 1980). "In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself." *In re Shields*, 552 N.W.2d 581, 582 (Minn.App.1996) (quotation omitted), *review denied* (Minn. Oct 29, 1996).

> Conversely, intention which the testator may have had, but did not express in his will, cannot be considered. Though the court is to consider surrounding circumstances, it cannot speculate what the testator would have done with knowledge of events subsequent to his or her death and thereby rewrite the will.

*In re Hartman*, 347 N.W.2d 480, 484 (Minn.1984) (quotation and citation omitted).

■ A settlor's "intention must be ascertained from the language of his will, which may have a meaning controlled by surrounding circumstances or context." *In re Holden's Trust*, 207 Minn. 211, 215, 291 N.W. 104, 106 (1940). The specific provisions of the document should not be read in isolation and whenever possible, "effect should be given to every provision" of the instrument. *In re Wyman*, 308 N.W.2d 311, 315 (Minn.1981). "A court may not rewrite a trust or will to provide by conjecture what a [settlor] might have intended if he knew how events would occur." *In re Wiedemann*, 358 N.W.2d 139, 142 (Minn.App.1984). On review, ap-

pellate courts evaluate the district court's findings concerning wills and trusts under a clearly erroneous standard and review conclusions of law de novo. *In re Simpkins*, 446 N.W.2d 188, 190 (Minn.App. 1989).

In Minnesota, adopted children have the same legal standing "as biological children in all respects, including their right to inherit by laws of intestacy or under appropriate testamentary provisions." *Harrington*, 311 Minn. at 408, 250 N.W.2d at 166 (quotation omitted). Minnesota has long been a forerunner in creating "strong statutory policy favoring the inheritance rights of adoptees." *Toombs v. Daniels*, 361 N.W.2d 801, 806 (Minn.1985).

The supreme court has been very clear that this state's laws create a clear presumption that adopted children are included in a will or trust provision. *Harrington*, 311 Minn. at 410, 250 N.W.2d at 167. For testamentary purposes, the word "children" includes adopted children. *In re Nash*, 265 Minn. 412, 416, 122 N.W.2d 104, 107 (1963). The presumption that adopted children have the same rights as any other children will only be overcome if the adopted child is explicitly excluded by the settlor. *Toombs*, 361 N.W.2d at 805.

The intent to exclude a person from a trust need not appear solely on the face of the document itself, but can be determined from surrounding circumstances. *In re Uliscni*, 372 N.W.2d 759, 762 (Minn.App.1985). A person need not be expressly named and identified as disinherited in order to be excluded. *Id.* at 761. Nevertheless the settlor must make the intention to exclude explicitly clear. *Toombs*, 361 N.W.2d at 805.

For example, in the context of an adopted person's ability to inherit, the su-preme court held that when a testator used the phrase "hereafter born" the testator was merely referring to children who would be brought into the family after the execution of the trust and did not declare an intention to exclude adopted children. *Nash*, 265 Minn. at 419, 122 N.W.2d at 109. Similarly, in *Harrington* the supreme court concluded that the phrases "the child or children of my said daughter, the issue of her body" "if any born after my decease" and "in any such after-born child or children" were not sufficiently explicit to rule out adoptees. *Harrington*, 311 Minn. at 404, 410, 250 N.W.2d at 164, 167. Conversely, where a testator explicitly stated that he "specifically disinherit[ed] any and all persons who are or who claim to be my heirs at law, except as herein provided" the district court properly concluded that the testator's child born out of wedlock was excluded from the will. *Uliscni*, 372 N.W.2d at 762.

Here, the trust specifically excludes Gwenyth. The language clearly identifies her by name and states that she was purposefully excluded from the trust based on the assumption that her father would care for her. But the trust does not state or even address whether Gwenyth's children are not to benefit from the trust, much less explicitly exclude her children. The trust simply makes no mention of her issue and the testamentary documents are silent as to inclusion or exclusion.

The Lanes' testamentary documents are quite explicit that adoptees can take as heirs under the trust. On numerous occasions the trusts specifically state that adoptees were to be treated equally for inheritance purposes. Further, the Lanes have a considerable history of interfamilial adult adoption. Appellants' grandfather was adopted as an adult by his sister and brother-in-law and named in their will and trust as their son and heir. More recently

appellants' own stepbrother was adopted as an adult and has been permitted to benefit from the trust.

Underlying appellant's challenge is the undisputed fact that, by consequence of the adult adoption here, Charles DeWitt will receive far more from the trusts at issue than other members of his generation. There is more than a little element of inequity here, and as Justice Kelly observed in his dissent in *Harrington*, the net result is a trust beneficiary is given a power of appointment that "may be exercised by the simple expedient of adopting adults," potentially doing violence to the settlor's carefully crafted plan. *Harrington*, 311 Minn. at 413, 250 N.W.2d at 168 (Kelly J., dissenting). Yet, unlike *Harrington*, we are presented with a testamentary document that explicitly commands the equal treatment of adopted children and does not explicitly exclude Charles DeWitt.

While we are not unsympathetic to appellant's argument, the long history of embracing adult adoption, combined with the lack of explicit exclusion of the children of Gwenyth, leads to the conclusion that the district court did not err in holding that Charles DeWitt was George Barber's son and a beneficiary of the trust in question.

## II

Appellants argue that the district court should have permitted an investigation into the circumstances of DeWitt's adoption to determine if the adoption took place simply to thwart the settlors' intent. Appellants' argument presupposes that the settlors, in fact, intended to exclude Gwenyth's heirs. As discussed earlier, the evidence does not support this assertion.

Extrinsic evidence would be admissible to show an intentional omission. *In re Hoigaard*, 360 N.W.2d 360, 363 (Minn.App. 1984), *review denied* (Minn. Mar. 21, 1985).

But the investigation appellant seeks would not determine the intent of the settlors, but instead the intent of a beneficiary. The four corners of the testamentary documents reveal the settlors' intention to include adopted children. The family's extensive history of adult adoption suggests why they had such a strong preference for this inclusion. Regardless of DeWitt and Barbour's motivation, there is no ambiguity concerning the settlors' intent to include adopted children. Since there is nothing to be gained by the inspection, we affirm the district court's refusal to permit it.

## DECISION

The district court did not err in holding that Charles DeWitt was eligible to benefit from the trust as the adopted son of George Barbour. Further, because an examination of the circumstances surrounding DeWitt's adoption would not shed any light on the settlors' intent, the district court properly denied the trustees petition to conduct such an investigation.

**Affirmed.**