### In re RUSSIE.

(District Court, D. Oregon. September 14, 1899.)

### No. 36.

BANKRUPTCY—EXEMPT PROPERTY—INDIAN LANDS.

An act of congress providing for the allotment in severalty of the agricultural lands of an Indian reservation, declared that the United States would hold the lands for 25 years in trust for the sole use and benefit of the several Indian allottees, who were not allowed to convey or incumber the lands during that time, and that at the expiration of that period the United States would convey the lands to the allottees, or their heirs, discharged of the trust, and free from all charges and incumbrances. During the time named, an Indian, one of the allottees under the act, became a voluntary bankrupt. *Held*, that the lands allotted to him did not vest in his trustee in bankruptcy, not being property which he could have alienated or incumbered, but being exempt under a law which was not repealed or affected by the bankruptcy act.

In Bankruptcy. On review of decision of referee in bankruptcy.

Carter & Raley, for bankrupt.

Balieray & Hailey, for objecting creditors.

BELLINGER, District Judge. This is a case of voluntary bankruptcy. The bankrupt is an Indian, and an allottee of lands under an act of congress approved March 3, 1885 (23 Stat. 340). The act provides for the allotment in severalty of agricultural lands com-

prised within the Umatilla reservation, in this state, to the Indians residing on such reservation. In addition to the allotment in severalty of agricultural lands, the act reserves a reasonable amount of pasture and timber lands for the use of the Indian allottees in common, and provides for a selection of 640 acres for an industrial farm and school, the whole to be in as compact a form as possible. The act further provides that:

"The president shall cause patents to issue to all persons to whom allotments of lands shall be made under the provisions of this act, which shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state of Oregon, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: provided, that the law of alienation and descent in force in the state of Oregon shall apply thereto after patents have been executed, except as herein otherwise provided. * * * And if any conveyance is made of the lands set apart and allotted as herein provided, or any contract made touching the same, or any lien thereon created before the issuing of the patent herein provided, such conveyance, contract, or lien shall be absolutely null and void."

The creditors of the bankrupt contend that the allotted lands of Russie are subject to be taken as a part of his estate for distribution among creditors. Their contention is that the bankrupt law operated to repeal the provisions of the allotment act. By section 70 of the bankrupt act the trustee is vested "with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to property; (2) interest in patents, patent rights, copy rights and trade marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of creditors; (5) property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process against him; and (6) rights of action arising upon contracts or from unlawful taking or retention of or injury to his property." The bankrupt act recognizes all exemptions, whether state or federal, as they existed at the time of the passage of the act; and the section quoted, descriptive of the property with which the trustee is vested, does not include such property as that in controversy. This property is excluded from the description of property given in subdivision 5 of section 70 of the bankrupt act, which describes as one of the classes of property to be taken by the trustee property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. This is not such property, and it is clearly the intention of congress that property should not pass to the trustee which could not be the subject of conveyance or disposition by the bankrupt at the time the bankruptcy proceedings were inaugurated. It is not the policy of the bankruptcy act to interfere with the acts of congress relating to the disposition and control of property set apart for the benefit of members of the Indian tribes. Obviously, the policy of

congress is to preserve what may be termed "Indian lands" intact, for the benefit of the individuals composing the tribe to whom allotments have been or may be made; and therefore the right of disposition by the Indian allottees upon these reservations is expressly withheld. If the Indian cannot dispose of these lands by deed, or by suffering an execution to be levied upon them under judicial process, he cannot dispose of them by the method of a petition in bankruptcy. The policy which preserves the land from disposition in the one case operates in the other; otherwise, the providence which the government exercises over these Indians will be defeated, and the industrial Indian community which has been set up on the reservation, with its adjuncts of an agricultural farm and school, will be intruded upon by white men, who will succeed to the Indian title and privileges through the operation of the bankrupt law. It is argued that an Indian who voluntarily goes into bankruptcy should at least forfeit to his creditors the property interest which he holds under the allotment act. But the debts of such an Indian are not created upon the credit of the land allotted to him. The man who deals with such an Indian does so with knowledge of his disability to dispose of or incumber the land held under the allotment act. He expected nothing from this source, and has no reason to complain that he gets nothing. The decision of the referee, holding that the allotted lands in question are not liable for the bankrupt's debts, is affirmed.