## In re DENISON.
### No. 4236.

District Court, W. D. Oklahoma.
March 1, 1930.

Walter L. Gray, of Fairfax, Okl., and Poe, Lundy & Morgan, H. R. Duncan, and L. M. Poe, Jr., all of Tulsa, Okl., for trustee.

Sargent & Ross, of Newkirk, Okl., for bankrupt.

VAUGHT, District Judge.

The bankrupt filed a voluntary petition in bankruptcy, was thereafter duly adjudged a bankrupt, and the case properly referred for administration.

The bankrupt listed his property, and under Section B-4 states: "Petitioner is an original allottee of the Osage Tribe of Indians, and as such, is entitled to and receives what is ordinarily termed one head-right to all the minerals produced according to Act of Congress. For the past two years, or approximately that time, the quarterly income has been from $800 to $1,000. Petitioner does not know how to fix a value upon this property or right held in trust for him by the Federal government."

Under Schedule B-5, the bankrupt states: "Petitioner claims exemption of the so-called head-right due him as a member of the Osage tribe of Indians heretofore listed in previous schedule under authority of Act of Congress

creating the trust and all laws pertaining thereto."

Thereafter, on the 30th of October, 1929, the trustee made the following report to the referee: "The under-signed trustee in bankruptcy of Bert Denison, bankrupt, advises the said referee that in the original appraisement heretofore submitted, the head-right of Bert Denison as an Osage Indian should have been included as an asset of the estate and have a market value of $25,000, and that the same is not an exemption and has not been so listed by this trustee, and the said head-right is hereby reported as an asset of Bert Denison, bankrupt."

Thereafter, on November 7, 1929, the bankrupt filed his exceptions to the report of the trustee as follows: "Comes now Bert Denison, bankrupt, and advises said referee that on October 30th, 1929, J. J. Quarles, Jr., as trustee, filed his report in the bankruptcy of said Bert Denison, alleging and stating therein that the head-right of Bert Denison as an Osage Indian should have been included as an asset of the estate of said Bert Denison, and that said head-right has a value of $25,000, and that said head-right is not an exemption, and is reported by said trustee as an asset of the bankrupt, Bert Denison. Said bankrupt * * * hereby excepts to said report on the ground and for the reason that said head-right is exempt property and should not be listed as an asset, and respectfully asks that this matter be set down for hearing at the earliest possible time; that all parties interested be given notice of the date, time and place of said hearing, and that upon final determination thereof a finding be made that said head-right is exempt and listed among the exemptions of said bankrupt."

By order duly made in said cause, a hearing on the report of the trustee and the exceptions filed thereto by the bankrupt was duly had, and upon depositions duly taken and upon oral testimony in which it was admitted that the bankrupt is an original allottee of less than half Indian blood, the referee, after consideration of briefs duly filed, sustained the exceptions of the bankrupt and entered the following order: "It is, therefore, ordered and directed that the said Osage Indian head-right, and the quarterly annuity payments derived therefrom be and the same are hereby surrendered to the bankrupt as exempt, and not subject to administration of this cause."

The trustee thereafter filed his petition in this court for a review of the referee's order.

The question for determination, by this court, is whether or not the Osage "head-right" of the bankrupt, Bert Denison, constitutes an asset of the bankrupt to be administered by the trustee in bankruptcy as the other assets of said bankrupt. The question has been carefully and fully briefed by the attorneys for both the trustee and for the bankrupt. I have examined the record, and the additional briefs filed in this court.

It is necessary to briefly review the history of the legislation affecting the Osage Indians and their property rights. At the time of the passage of the Osage Allotment Act of June 28th, 1906 (34 Stat. 539), the Osage Indians were occupying as a tribe their reservation in Oklahoma territory containing approximately a million and a half acres of land largely underlaid with oil, gas, and other minerals. At the same time the government held in trust for said tribe, which consisted of slightly in excess of 2,000 persons, a fund of over eight million dollars received under various treaties as compensation for the relinquishment of other lands. The said act provided for the allotment of their reservation lands, and in section 3 thereof reserved the oil, gas, coal, or other minerals to. the Osage Tribe for a period of 25 years, from and after the 8th day of April, 1906. The said act designates all said mineral interest and funds above referred to as held in trust by the United States, and so forth. It also refers to certain lands held in trust, but these were apparently certain Indian villages and tracts withheld from allotment, and for the purposes of this opinion it is not necessary to discuss either these tracts or the trust fund of eight million dollars.

The mineral interests of the Osage Tribe are by said Act of 1906, held by the government in trust for a period of 25 years from April 8th, 1906, and by the Act of March 3d, 1921 (41 Stat. 1249), the time of such trust holding was extended to April 8th, 1946, and by the Act of March 2d, 1929, said trust was extended to April 8th, 1958. (45 Stat. 1478.)

The above acts removed the restrictions on Indians of less than one half Indian blood except as to the trust estate held by the government belonging to the tribe, and provide for the manner of payment of quarterly annuities to noncompetents, and the payment to those having certificates of competency of their portion of the fund as it accumulates.

Counsel for the trustee insist in their brief that a member of the Osage Tribe of less than half blood, who has received a certificate of competency, has all the rights of a white man, and that he can dispose of any of his property. I cannot agree with the learned counsel, nor do I find any decisions which

were cited in their brief to justify that contention. A member of the tribe receiving a certificate of competency could, prior to the Act of March 3d, 1921, dispose of any property which he had, including his surplus land, but could not dispose of his homestead during the trust period.

Section 3 of the Act of March 3d, 1921 (41 Stat. 1249), gave to an Osage Indian of less than half Indian blood the additional right to dispose of his homestead, but no power was given in this act or any other act to dispose of or incumber in any way his interest in the trust estate.

What is an Osage "head-right?" This is thoroughly defined by the Act of 1906, and is nothing more than the interest that a member of the tribe has in the Osage tribal trust estate, and the trust consists of the oil, gas, and mineral rights, and the funds which were placed to the credit of the Osage tribe, all fully set out in the above act.

The only distinction as to alienation of property, between an Osage Indian of half blood or more, and an Osage Indian of less than half blood is that Osage Indians of half blood or more may have certificates of competency issued to them upon application, and in the discretion of the Secretary of the Interior (section 2, par. 7, Act of June 28, 1906, 34 Stat. 542), while all restrictions against the alienation of their allotment selections, both surplus and homestead, of all adult Osage Indians, of less than one half Indian blood, have been removed. Section 3, Act of Congress, March 3, 1921, amendatory of section 3, Act of Congress, June 28, 1906.

■ An adult Osage Indian of half blood or more, with a certificate of competency, has the right to sell and convey any lands deeded to him by reason of the Act of June 28, 1906, except his homestead, while an Osage Indian of less than half Indian blood, has the right to sell both his surplus and homestead. A "competent" Osage Indian is one having a certificate of competency.

The word competent has been defined as follows: "The word 'competent,' as used in this Act, shall mean a person to whom a certificate has been issued authorizing alienation of all the lands comprising his allotment, except his homestead." Section 9, Act of April 18, 1912; 37 Stat. 86; McCurdy v. U. S., 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706.

■ Nowhere in the Act of 1906, or by any amendments thereto, does an Osage Indian of less than half blood with a certificate of competency, or with restrictions removed, have the right to dispose of his trust fund or his trust estate. Congress has the right at any time to modify the provisions for holding or disposing of the trust estate of the Osages. The whole purpose of Congress has been to protect the Indian, and provide for his maintenance, his education and his care, and the trust estate cannot be affected by any obligations created by the Indian even though he has a certificate of competency.

■ This does not, even by implication, empower him to sell his interest in a trust estate. Congress has provided that at the termination of the trust period, whenever it may be, that the interest of the individual Indian shall be delivered to him intact. United States v. Thurston County (C. C. A.) 143 F. 287. Could Congress do this if taxes could attach or if liens could attach by virtue of judgments and obligations of any character. If the so-called Osage "head-right" is an estate in bankruptcy, then every Osage Indian having had issued to him a certificate of competency, could absolutely defeat the original purpose of Congress. It would be an easy matter for him to incur obligations either in good faith, or otherwise, and through a bankruptcy proceeding destroy the control which the government exercises over his trust estate and through the bankruptcy proceeding get control of same himself.

■ Counsel in their brief urge strongly that Congress has provided that Osage Indians shall pay their debts, and that equity shall be done, but the language of the Act of 1906 is clear, it is unambiguous, it is plain, and the creditors of Osage Indians have an opportunity to know the rights of the Indians, and when they deal with the Indians they deal with full knowledge of the limitations which Congress has placed upon the alienation of their property.

In re Russie, 96 F. 609, the district court of Oregon specifically holds that the lands allotted to an Indian did not vest in his trustee in bankruptcy, not being property which he could have alienated or incumbered, but being exempt under a law which was not repealed or affected by the Bankruptcy Act. This is a district court opinion, yet the reasoning in that case has never been questioned, and it has been cited with approval by the higher courts.

In the case of United States v. Rickert, 188 U. S. 432, 23 S. Ct. 478, 47 L. Ed. 532, the United States Supreme Court holds:

"(1) That neither the lands allotted nor the permanent improvements thereon nor the

personal property obtained from the United States and used by the Indians on the allotted lands, are subject to state or local taxation during the period of the trust provided by the above act of 1887.

"(2) The United States has such an interest in the question as to entitle it to maintain a suit to protect the Indians against local or state taxation."

In the body of the opinion the court says: "In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land, or any contract touching the same, while the United States held the title in trust, should be absolutely null and void."

In the various acts of Congress relating to the Osage Indians from 1906 up to and including the Act of 1929, the only provision for the sale of a headright that is made according to our investigation of these acts, is the Act of April 12, 1924 (43 Stat. 94), and is as follows: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That any right to or interest in the lands, money, or mineral interests, as provided in the Act of Congress approved June 28, 1906 (Thirty-fourth Statutes at Large, page 539), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' and in Acts amendatory thereof and supplemental thereto, vested in, determined, or adjudged to be the right or property of any person not an Indian by blood, may with the approval of the Secretary of the Interior and not otherwise be sold, assigned, and transferred under such rules and regulations as the Secretary of the Interior may prescribe."

This act specifically provides for the sale of a headright belonging to any person not an Indian by blood, and since Congress has made no provision for the sale of an Osage headright nor for the incumbrance of an Osage headright, but has retained jurisdiction of this particular property for the benefit of the members of the tribe, it certainly could not be subject to execution. It would not be subject to the laws of the state in which it is located, and could not be considered as an asset in bankruptcy unless said bankrupt were a person "not an Indian by blood."

For the reasons above stated, the order of the referee in bankruptcy is approved.

Exception allowed.