Martha SAVAGE and Beatrice Owens,
Plaintiffs in Error,

v.

H. Charles HILL and Mrs. Haskell Hill, individually and as Executors of the Estate
of Cena B. Gatch Hill, deceased, Defendants in Error.

No. 38378.

Supreme Court of Oklahoma.

Sept. 15, 1959.

Rehearing Denied Nov. 3, 1959.

Melton, McElroy & Vaughn, Chickasha, for plaintiffs in error.

R. H. Brown, Duncan, and Harry Hammerly, Chickasha, for defendants in error.

BERRY, Justice.

This is an appeal by Martha Savage and Beatrice Owens from judgment of the District Court which in effect affirmed order of the county court allowing final account and final decree of distribution in the estate of Cena B. Hill, deceased.

Cena B. Hill, hereafter referred to as "Mrs. Hill", married Harry W. Hill, hereafter referred to as "Mr. Hill", in 1918. No children were born of this marriage. Mr. Hill had been married prior to his marriage to Mrs. Hill and four children, H. Chas. Hill (one of the defendants in error), Martha Savage, Beatrice Owens (plaintiffs in error), and Howard W. Hill were born of the prior marriage. The ages of the children in 1918 were approximately 13, 12, 8 and 4. Mr. Hill died in 1949. His son, Howard W. Hill, predeceased him. Howard W. Hill was survived by a son Howard William Hill.

Mrs. Hill died testate in 1955. She was survived by a sister, Marguerite Gatch and a brother, Frank M. Gatch. The sister and brother were residents of Iowa.

Mrs. Hill made bequests to her sister and brother, step-children and step-grandchildren in her holographic will which reads as follows:

"Mrs. Harry W. Hill
"Marlow, Okla.
"R.F.D. 1
"This is my will                June 23–1952

"After my funeral expenses and debts are paid—from $27,273.96 (which was ½ of the inventory taken in 1949 after the death of my dear husband Harry W. Hill—I also want given to the grand children of the late Harry W Hill One thousand dollars each—They are Robert Clifford Lyle, Harry Chas. Hill, Martha Ann Grubb and Howard William Hill. I want my sister Marg-

uerite Gatch to ten thousand $10,000 dollars  The remaider of the money H. Chas. Hill to manage.

"I also want my sister to have my flat silver which my uncle Milt W. Gatch gave me in 1918—The furniture and other things belonging to me—I want my brother Frank M. Gatch and my sister Marguerite Gatch to have what they want—And what is left to be divided among the children of the late Harry W. Hill—H. Chas. Hill, Martha Savage and Beatric Owens—with exception of one antique chair with needle point seat, this came from Ohio and I want it given to Miss Maxine Turner.

"The large Indian Rug which was bot on a western trip was requested by Harry W. Hill to be given to H. Chas. Hill when I was through with it— every thing which belonged to grandma Hill (Martha A. Cox Hill) are to be divided among her grandchildren—H. Chas. Hill Sr. Martha Hill Savage, and Beatric Hill Owens. This was her wish. I want H. Chas Hill Sr. and his wife Haskell Wanda Hill to be administrator & administratric to my estate—

"Signed June 23–1952—
"Cena B. Gatch Hill—
"Dura Wilhelm ⎫      Witnesses—"
"Sara Williams ⎭

The trial court found that under the facts and the wording of Mrs. Hill's will to the effect that "The remainder of the money H. Chas Hill to manage", said H. Chas. Hill took all "money" of Mrs. Hill that was not specifically bequeathed to others. Martha Savage and Beatrice Owens contend that in using the quoted language Mrs. Hill intended to create a trust in H. Chas. Hill as to her "money", and that by use of language to the effect "and what is left to be divided among the children of the late Harry H. Hill—H. Chas. Hill, Martha Savage and Beatrice Owens," Mrs. Hill intended to divide that which H. Chas. Hill claims equally among

the surviving children of Mr. Hill. H. Chas. Hill contends that in using the language last quoted Mrs. Hill intended that he and his sisters take that portion of Mrs. Hill's furniture and personal effects which Mrs. Hill's sister and brother didn't take.

The record discloses that following Mr. and Mrs. Hill's marriage, they and Mr. Hill's children lived with Mr. Hill's parents on a farm. In 1922 Martha Savage married and left the home and within a short time Beatrice Owens left the home to live with Martha Savage and her husband and never returned to the home. H. Chas. Hill continued to live in the home until he was married and after his marriage with the exception of a short period, lived either in the home or near by. For several years prior to his death Mr. Hill was engaged in the cotton-gin business and in operating a dairy. From 1928 to Mr. Hill's death, H. Chas. Hill engaged in the dairy business as Mr. Hill's partner. Following Mr. Hill's death, H. Chas. Hill's son purchased Mrs. Hill's interest in the dairy business for $27,273.96 and gave his step-grandmother his promissory note in the amount of the purchase price, which was one half of the value of said dairy business as inventoried in Mr. Hill's estate. Upon the son making known, at a later date, his desire to quit the dairy business, H. Chas. Hill gave Mrs. Hill his promissory note in the amount of $27,273.96 and subsequently borrowed $5,000 from Mrs. Hill, which indebtedness was evidenced by a promissory note. At the time of her death Mrs. Hill's estate consisted of the referred-to notes and a checking account of approximately $1,800. As we understand the record, no part of the principal amount due on the notes was paid prior to Mrs. Hill's death. Following her death, H. Chas. Hill paid the indebtedness represented by the promissory notes, which fact has no bearing on the construction that should be placed on Mrs. Hill's will.

Following Mr. Hill's death, Mrs. Hill continued to live on the farm. She on occasion took vacation trips and shortly before her death made a trip to Ohio where she died and was buried. During the period that Mrs. Hill remained at the farm following Mr. Hill's death, H. Chas. Hill and his wife, Haskell Hill, visited and consulted and advised with her. Mrs. Hill's sister made this observation about H. Chas. Hill's relation with Mrs. Hill:

"Miss Gatch: The fact is that H. Chas. Hill, in spite of being a step-son, he was to her dearest and most trusted, he really took care of her and looked after all of her wants and her business and it would seem natural and normal for her to leave Charles Hill the remainder of her estate."

Martha Savage, during the last years of Mrs. Hill's life, lived approximately nineteen miles from Mrs. Hill's home and visited her infrequently. It appears that Beatrice Owens seldom visited Mrs. Hill.

It is apparent that in the first portion of her will beginning with "After my funeral" and ending with "$10,000 dollars," Mrs. Hill undertook to dispose of her property represented by the $27,273.96 and $5,000 promissory notes and the $1,800 bank account, and it is also apparent that in the last portion of her will beginning with "I also want" and ending with "This was her wish", Mrs. Hill undertook to dispose of her furniture and personal effects. It was in the last referred-to portion of the will that this language appears: "I also want my sister to have my flat silver which my uncle Milt W. Gatch gave me in 1918—The furniture and other things belonging to me —I want my brother Frank M. Gatch and my sister Marguerite Gatch to have what they want—And what is left to be divided among the children of the late Harry W. Hill—H. Chas. Hill, Martha Savage and Beatric Owens—with exception of one antique chair with needle point seat, this came from Ohio and I want it given to Miss Maxine Turner". In using the clause "and what is left to be divided among the children of the late Harry W. Hill", Mrs. Hill, in our opinion, was referring to furniture and personal effects that her sister and brother did not want, and not to the intangibles that she owned. We are, therefore, of the opinion that under the clear

wording of the will, Mrs. Hill intended to only bequeath to Martha Savage and Beatrice Owens a contingent interest in furniture and personal effects. But does the phraseology of the will relied upon by H. Chas. Hill bequeath to him the remainder of Mrs. Hill's intangible property?

In view of the fact that Mrs. Hill's estate consisted of the intangibles heretofore referred to and furniture and personal effects, and the fact that she had made specific bequests of money in that portion of her will which immediately precedes the statement "The remainder of the money H. Chas. Hill to manage", Mrs. Hill, no doubt, was referring to the money due and owing her from H. Chas. Hill when she used the word "money" in said statement. She, of course, knew that the money on deposit would no doubt be used in paying her debts and in satisfying the specific cash bequests which she made and that there would remain for distribution to beneficiaries only the indebtedness from H. Chas. Hill to her. The word "money" may be used in a will so as to include money due. Mutual Life Ins. Co. of New York v. Spohn, 172 Ky. 90, 188 S.W. 1078, and cases cited.

In the event Mrs. Hill did not intend to bequeath the property in controversy to H. Chas. Hill, Mrs. Hill failed to bequeath said property and same would pass to Mrs. Hill's brother and sister as her heirs at law. The sister and brother reject such a construction and assert that the will should be construed as bequeathing to H. Chas. Hill the remainder of Mrs. Hill's intangibles after satisfying specific bequests of intangibles. This construction is, of course, not binding on us, but the rule that a testator will be presumed to have intended to dispose of his entire estate and thus avoid intestacy may be considered in construing the will in controversy. 95 C.J.S. Wills § 615, p. 828. We are not unmindful that consideration may be given a practical construction placed in a will. 95 C.J.S. Wills § 627, p. 888.

We are also privileged in construing the will in controversy to take into consideration the circumstances under which the will was made and Mrs. Hill's feelings toward the beneficiary named in the will. 84 O.S.1951 § 152; McAllister v. Long, 206 Okl. 623, 246 P.2d 352, and 95 C.J.S. Wills § 635, p. 910. In construing the will before us, we may, therefore, take into consideration that that which was bequeathed to H. Chas. Hill was a portion of his indebtedness to Mrs. Hill and that testators often forgive debts owing to them by relatives or close friends; that H. Chas. Hill took care of Mrs. Hill and to her was most "dear and most trusted"; and that from a practical standpoint H. Chas. Hill could not "manage" his indebtedness to Mrs. Hill in the generally-accepted sense of the word "manage".

The statement "The remainder of the money H. Chas. Hill to manage" when considered in connection with the other portions of Mrs. Hill's will did not serve to create a trust in Mrs. Hill's bank account or the indebtedness from H. Chas. Hill to her. At 96 C.J.S. Wills § 1011, p. 534, this will be found:

"According to the more modern and prevailing view, as distinguished from the earlier and minority view, discussed below, precatory words of themselves are insufficient to create a testamentary trust. * * *"

See also annotated notes beginning at p. 10, 49 A.L.R.

In view of the fact that a trust was not created, the phrase "Manage" becomes surplusage and must be ignored in construing the will. 57 Am.Jur. "Wills" Sec. 1122, p. 717. If said quoted phrase is ignored, it becomes apparent that under the wording of the will Mrs. Hill intended to bequeath to H. Chas. Hill all of her intangibles which were not specifically bequeathed to others. We have not overlooked the fact that if the word "manage" is treated as surplusage, the word "to" follows and does not precede the name "H.

Chas. Hill" in the clause under consideration. In view of the phrasing of other portions of the will we do not attach a great deal of significance to the foregoing. For example in the sentence immediately preceding the clause or sentence in which the word "manage" is used, the word "have" is not used. We refer to the sentence "I want my sister Marguerite Gatch to ten thousand $10,000.00 dollars."

We are of the opinion that the trial court's judgment is not clearly against the weight of the evidence, and for said reason the judgment is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, BLACKBIRD and IRWIN, JJ., concur.

HALLEY and JACKSON, JJ., dissent.