In the Matter of the ESTATE of
Thomas TAYRIEN, Deceased.

John J. McGRATH, III, Appellant,

v.

Maudie J. McANELLY, Alberty Pearman
and Elmer C. Tayrien, Appellees.

No. 50849.

Supreme Court of Oklahoma.

Jan. 15, 1980.

Rehearing Denied April 28, 1980.

16. See *In re Boyd*, 403 A.2d 744 (D.C.App.1979) and possible application of the "substituted judgment doctrine."

Robert W. Amis, Oklahoma City, for appellant; Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, of counsel.

Matthew J. Kane, for appellees; Kane, Kane, Wilson & Mattingly, Pawhuska, of counsel.

DOOLIN, Justice:

This is a case of first impression dealing with the construction of a bequest in the will of an Osage Indian. Thomas Tayrien (Testator), a three-eighths Osage Indian, was born in 1865. At his death in 1930, he owned one and one-sixth Osage Indian headright. His wife, Emily, offered the will for probate. The will made several specific bequests including the following paragraph:

> "3. I give, devise and bequeath out of my oil and gas leases $10 out of each quarterly payment to each of my following children; James T.; William D.; George A.; Andrew J.; Paul R.; John C.; and Maudie J. Vulgamott; the balance of this oil and gas income to be equally distributed each quarter between my wife Emily Tayrien and my daughter Madeline L. Tayrien."

There was no residuary clause. The estate was closed in 1933, distributing his estate under the will.

In 1975, some 42 years later, a daughter and two grandchildren of testator petitioned the district court to appoint an administrator with will annexed, seeking a supplemental decree alleging the 1933 decree did not fully distribute the estate in that the one and one-sixth headright was not distributed.

The 1933 decree of distribution made the following finding:

> "That the said Thomas Tayrien was a member of the Osage Tribe of Indians of less than one-half blood; that at the time of his death he was the owner of one and one-sixth (1⅙) Osage Indian headrights or interest in and to the property rights of the Osage tribe of Indians; that the said Thomas Tayrien left an instrument as his last Will and Testament, which was duly and regularly submitted to the Secretary of the Interior and approved by said Secretary of Interior and admitted to probate in this court;"

The one and one-sixth headright was distributed thus:

"That by the terms of said instrument Ten ($10.00) Dollars out of each quarterly payment of the oil and gas leases, (to-wit: Ten [$10.00] Dollars out of each quarterly payment of the fund credited to the decedent's one and one-sixth (1⅙) Osage headright) be paid to the following children of said deceased:

James T. Tayrien;
William D. Tayrien;
George A. Tayrien;
Andrew J. Tayrien;
Paul R. Tayrien;
John C. Tayrien;
Maudie J. Vulgamott;

and that the balance of this oil and gas income (to-wit, the balance of each quarterly annuity payment of the funds credited to the decedent's one and one-sixth [1⅙] Osage headrights) be equally distributed each quarter to Emily Tayrien and Madeline L. Tayrien, now Barnes."

The decree was final and unappealed.

The trial court allowed the estate to be reopened and appointed petitioners as administrators. Because the will did not specifically mention testator's headright, the trial court declared the one and one-sixth headright passed by intestate succession to petitioners, testator's heirs, according to the laws of the State of Oklahoma. The Court of Appeals affirmed. We granted certiorari under 12 O.S.1978 Supp. Ch. 15, App. 3, Rule 3.13, subd. A(1).[1]

At the time of the passage of the Osage Allotment Act of June 28, 1906, 34 Stat.

539, (the Act), the Osage Indians were occupying, as a tribe, their reservation in Oklahoma containing approximately a million and a half acres of land purchased from the Cherokees. At the same time the United States held in trust for the Osage, a fund of over eight million dollars received under various treaties as compensation for the relinquishment of other lands. Prior to the Act, title to the lands and these funds remained in the tribe. By the Act, the lands were divided among the 2,229 members of the tribe with certain restrictions retained.[2] Under the Act, an Osage, although allowed to alienate the surface upon a receipt of a certificate of competency, could not sell the minerals. The minerals were placed in the trust and reserved to the use of the tribe for twenty-five years, the royalties and interest on the trust fund to be paid to the tribe. The original act provided the minerals would become the absolute property of the individual owners at the expiration of twenty-five years. This twenty-five year period was extended several times and by the Act of October 6, 1964, 78 Stat. 1008 minerals are reserved for an indefinite period.[3]

The Act provided all funds due the Osage Tribe would be credited to the individual members on a basis of pro rata division among the members or their heirs. This pro rata interest in the trust fund is a headright.

Each original allottee received one headright. A headright has been several times defined but basically it consists of two parts: 1) the right to receive trust funds arising largely from mineral income,

---

1. Both Emily and Madeline are deceased. Under Emily's will her interest in the headright (.58333) was devised to Beatrice McManus for life, remainder to John McGrath and was distributed in this manner. McGrath is the appellant in this cause and petitioner on certiorari.

2. All restrictions were removed from Indians of less than ½ blood except as to the trust estate held by the federal government belonging to the tribe. Non-Indian owners may alienate headrights. See *In re Irwin*, 60 F.2d 495 (10th Cir. 1932); *In re Thompson's Estate*, 179 Okl. 240, 65 P.2d 442 (1937) cert. den. 302 U.S. 718, 58 S.Ct. 38, 82 L.Ed. 554.

3. The Act of March 3, 1921, 41 Stat. 1249 extended the trust period to 1946; the Act of March 2, 1929, 45 Stat. 1478 extended the period to 1958; the Act of June 24, 1938, 52 Stat. 1034 extended the period to 1983 and the Act of October 6, 1964, 78 Stat. 1008 extended the period indefinitely until Congress affirmatively abolishes it. See *Estate of Shelton v. Oklahoma Tax Commission*, 544 P.2d 495 (Okl.1975) cert. den. 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198; *Denoya v. Arrington*, 163 Okl. 44, 20 P.2d 563 (1932); *In re Denison*, 38 F.2d 662 (W.D.Okl.1930), affmd. *Quartes v. Denison*, 45 F.2d 585 (10th Cir. 1930).

at the end of trust period, and 2) during such period to participate in the distribution of bonuses and royalties arising from the mineral estate plus accrued interest on the trust fund.[4]

Congress has never relinquished control of Indian headrights, and the sale, encumbrance or alienation thereof is only authorized pursuant to acts of Congress. Thus any right of an heir or legatee to share in the corpus is dependent upon the wishes of Congress.[5]

■ Testator could not dispose of his headright except by will which as in all cases must be approved by the Secretary of the Interior.[6] Once a will has been approved, however, it is in all respects a document that must conform to and be tested in the light of the applicable laws of the State of Oklahoma.[7] Although the word headright was not mentioned in the will, the 1933 decree of distribution recites the will was approved by the Secretary of the Interior. The decree further states the reference to oil and gas leases and income was a reference to the one and one-sixth headright testator owned at his death. This finding is final and is the law of the case. We hold the headright was not omitted property.

No life estate was created by the will. Emily and Madeline were absolute legatees. The only remaining question is what did they take. Was the headright divisible into income and the corpus?

■ It is presumed in Oklahoma, a testator intends to dispose of his entire estate and avoid intestacy in whole or in part.[8] We have found no case where a headright has been severed in such a way as to provide income to one person and the right to the corpus, when and if Congress lifts the restriction, to another.[9] There is a general rule of will construction, stemming from common law, prescribing absent an affirmative expression of an intent in the will to sever the income from the full title, a grant or gift of the income of productive property for an unlimited time confers an absolute interest in the property.[10]

There is little doubt this is still the majority rule in the United States. In *City of Austin v. Austin National Bank of Austin*, 503 S.W.2d 759 (Tex.1974) the Texas Supreme Court citing 4 Page, Law of Wills § 33.40 stated:

"Prima facie, a gift of income arising from personalty without any restriction as to the time for which such income is to be paid and without any disposition of the corpus of the fund, is an absolute gift of such corpus."

It further stated:

"A gift over, after the determination of a prior interest, shows that testator did not intend that the corpus should pass to the first taker; but if he gives the income, after the interest of the first taker has (been) determined to another without any limit on the time for which he is to receive the income, the subsequent taker is given the corpus."

Such is exactly the case here. Testator bequeathed $10.00 of income out of each quarterly payment to each of seven children. He gave the balance of the income to Emily and Madeline without any limit on the time for which they were to receive it. Under this rule Emily and Madeline, in

---

4. *Globe Indemnity Co. v. Bruce*, 81 F.2d 143 (10th Cir. 1935); Semple: *Oklahoma Indian Land Titles*, p. 467 (1952).

5. *Taylor v. Tayrien*, 51 F.2d 884 (10th Cir. 1931); *In re Revard's Estate*, 178 Okl. 524, 63 P.2d 973 (1936).

6. Act of Congress of April 18, 1912, 37 Stat. 86–88; *Denoya v. Arrington*, 163 Okl. 44, 20 P.2d 563 (1932).

7. *In re Revard's Estate*, supra, n. 5; *In re Mose-che-he's Estate*, 188 Okl. 228, 107 P.2d 999 (1940).

8. *Savage v. Hill*, 346 P.2d 323 (Okl.1959).

9. We do not decide whether this would be a legal severance or address the possibility of an application of the Rule against Perpetuities.

10. See annotation at 174 A.L.R. 321, 329 and also the English cases cited therein.

addition to the income, were given the corpus. In these circumstances a gift of the income from minerals vests an absolute estate in the corpus from which the income arises.[11]

█ A headright is by definition a right to income from testator's interest in oil and gas leases in addition to an inchoate right to the corpus as encompassed by the definition.

All the presumptions in the will point toward an intention of the testator to bequeath the entire headright by the specific legacy here involved. Nothing in the language of the will taken as a whole indicates a contrary intention which would defeat this presumption.

We do not agree with the trial court testator died intestate as to the headright.

The 1933 decree distributed the portion of the headright in the form of income for an unlimited time. We hold this vested an absolute interest in the headright in Emily and Madeline Tayrien.[12]

REVERSED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS and SIMMS, JJ., concur.

HODGES, BARNES, HARGRAVE and OPALA, JJ., dissent.

---

11. *Hyde v. Rainey*, 233 Pa. 540, 82 A. 781 (1912).

12. Under the principles espoused in this opinion the interest in the headright, owned by Emily and Madeline and their heirs, is probably burdened with the initial bequest of $10.00 out of each quarterly payment due named children of testator and their heirs.