OSCN Found Document:O'DONOGHUE v. DOOLEY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 O'DONOGHUE v. DOOLEY
2016 OK 110
Case Number: 113489
Decided: 10/25/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 110, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE DAVID L. DOOLEY TRUST AND THE CAROLYN ANN COLLINS DOOLEY TRUST:

SANDRA O'DONOGHUE, Appellant,
v.
CAROLYN DOOLEY, TRUSTEE, Appellee.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III

¶0 Appellant, Sandra O'Donoghue, as personal representative of the estate of David O'Donoghue, commenced this action seeking an adjudication that the estates of David L. Dooley's grandchildren, Erin and David O'Donoghue, were the beneficiaries of bequests of trust principal under the David L. Dooley and Carolyn Ann Collins Dooley Trusts. The district court granted summary judgment to Carolyn Dooley, Trustee, and determined that the per stirpes bequests of trust principal to Erin and David, lapsed upon their death leaving no lineal descendants. The Court of Civil Appeals, Division III, reversed finding Appellant, as the spouse and beneficiary of the estate of David O'Donoghue, was entitled to take his share of the trust principal upon the death of Settlor's spouse. Appellee sought, and this Court granted, certiorari.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF THE COURT OF CIVIL APPEALS VACATED;
JUDGMENT OF THE DISTRICT COURT AFFIRMED.

Gregory C. Blackwell, BALL & MORSE, P.L.L.C., Norman, Oklahoma, for Appellant.
Craig E. Brown and Evan McCormick, WHEELER, WHEELER, MORGAN, FAULKNER & BROWN, and Debra W. McCormick and Eugene Bertman, MCCORMICK & BRYAN, Oklahoma City, Oklahoma, for Appellee.

WINCHESTER, J.

¶1 The primary issue on appeal is whether the per stirpes gift of any remaining Trust principal left to two of Settlor's grandchildren, who have died without lineal descendants, may ultimately be distributed to the widow of one of the grandchildren. We hold that the Trust principal remainder interest was intended for lineal descendants of the two grandchildren, and not to the grandchild's widow.

BACKGROUND

¶2 David L. Dooley (the Settlor) created the David L. Dooley Trust (Trust) on September 12, 2003, appointing himself as the initial trustee for his own benefit. The Settlor also established a pour-over will in which the Trust was the sole beneficiary. This same date, the Settlor married the Appellee, Carolyn Ann Collins, his partner of over thirteen years. The Settlor died a little over one month later on October 20, 2003, with all four of his children having predeceased him. The Settlor named two of his five grandchildren, Erin and David O'Donoghue, as successor trustees.

¶3 Pursuant to Article 5.02 of the Trust, because the Settlor was survived by his spouse, Appellee, the Trust was split into two parts, Part A and Part B.[1] Part A was named the "David L. Dooley Trust" and Part B was referred to as the "Carolyn Ann Collins Dooley Trust," named for the Settlor's spouse, Appellee herein. Pursuant to Article 5.02, Part A of the Trust was to "consist of an amount of property equal to the largest amount that can pass free of federal estate tax" and be distributed in accordance with the provisions of Article 5.04 of the Trust.

¶4 Article 5.04 of the Trust devised five gifts to each of the Settlor's five grandchildren. Two of the gifts were $1000.00 each to Susan and Janet Haggard. David Haggard's gift was $50,000. The Trust required each of these three gifts to lapse if the recipient predeceased the Settlor, which did not happen and the gifts have been disbursed. The remaining two gifts distributed "the balance of Part A, outright and free of trust, to the Settlor's grandchildren, Erin O'Donoghue and David O'Donoghue, per stirpes." According to the record herein, Erin and David each were paid $474,000.00 as their share of the Part A gifts. After the distributions were made to the grandchildren, Part A of the Trust appears to be complete.

¶5 Part B of the Trust consists of all remaining property not previously distributed under Part A. Article 5.05 provides for the distribution of the net income and principal of the Trust as follows, in pertinent part:

a. Income. Commencing as of the date of the death of the Settlor and throughout the lifetime of the Settlor's spouse, the Trustee shall distribute the net income of this Trust, in convenient installments, but not less frequently than annually.

b. Non-Productive Property. The Settlor's spouse may at any time, by written notice, require the Trustee either to make any non-productive property of the Trust productive or to convert such non-productive property to productive property within a reasonable time.

c. Death of Settlor's Spouse. On the death of the Settlor's spouse, all income accrued or received by the Trustee, but not distributed prior to the date of death of the Settlor's spouse, shall be paid to the estate of the Settlor's spouse, and all principal then remaining in this Trust shall be distributed to the Settlor's granddaughter, Erin O'Donoghue, and the Settlor's grandson, David O'Donoghue, per stirpes, and this Trust shall terminate.

¶6 It is undisputed that both Erin and David O'Donoghue died leaving no lineal descendants. Erin survived Settlor, but died testate on May 13, 2010, leaving David O'Donoghue as the sole beneficiary of Erin O'Donoghue's estate. David also survived Settlor, but died testate on December 21, 2013. Appellant, Sandra O'Donoghue, David's widow, is the sole beneficiary of David O'Donoghue's estate and is currently serving as personal representative of that estate. After the deaths of Erin and David, Appellee sought and obtained appointments as Trustee of the Trust.[2]

¶7 Appellant commenced the instant action, seeking construction of the provisions of the Trust and an accounting. Appellant argues that Erin and David are beneficiaries of Trust principal under the Trust and that she, as the sole beneficiary of the estate of David O'Donoghue, is entitled to Erin and David's distribution of the Trust's principal upon Appellee's death.

¶8 Appellee filed a motion to dismiss on the grounds that all distributions required by Article 5.04 had been made and that the per stirpes bequests to Erin and David under Article 5.05 were contingent upon Appellee's death before them. Appellee contends that the gifts to Erin and David lapsed upon their deaths without lineal descendants to satisfy a per stirpes distribution. The trial court denied the motion to dismiss and Appellee later filed a motion for summary judgment on the same grounds.

¶9 Appellant asserted a cross-motion for summary judgment claiming that Appellee was only entitled to income from Part B principal and that the interests of Erin and David to the principal vested at the time of Settlor's death and should fall to her as the sole beneficiary of David O'Donoghue's estate. Alternatively, Appellant stated that if the gifts to Erin and David had lapsed, the trust principal should be distributed in the probate of Settlor's estate under the laws of intestate succession.

¶10 On September 16, 2014, the trial court awarded summary judgment to Appellee, and denied Appellant's cross-motion. The trial court ruled that the distribution date for the remaining principal of Part B was intended to be the date of death of Settlor's spouse, which has yet to occur. Consequently, the trial court found that Appellant had no claim to any proceeds of the Trust. The trial court denied Appellant's motion to modify and Appellant appealed.

¶11 The Court of Civil Appeals, Division III, reversed the trial court, and held that the gifts of Trust principal to Erin and David vested upon Settlor's death and that the vested remainder interest passed generally to the heirs of Erin and David upon their deaths before Appellee or, more specifically, to Appellant, David's widow. Appellee petitioned for certiorari which this Court previously granted.

DISCUSSION

¶12 In construing the terms of a trust, the intention of the settlor of the trust should control. In re Dimick's Will, 1975 OK 10, ¶ 10, 531 P.2d 1027, 1030. In cases where a testamentary document is capable of two interpretations, one which would avoid intestacy and one that would not, the former interpretation should prevail. Matter of Tayrien's Estate, 1980 OK 8, ¶ 11, 609 P.2d 752, 755; Hulett v. First Nat. Bank and Trust Co. in Clinton, 1998 OK 21, ¶ 22, 956 P.2d 879, 885.

¶13 Here, the Settlor expressly intended for his wife, Appellee, to have the Trust income for life and for his grandchildren, Erin and David, to take any remaining Trust corpus, per stirpes. The gift to Erin and David is a remainder interest, intended to be disbursed per stirpes.

¶14 Appellee argues that Erin and David's interests in the remainder never vested because Appellee is still alive and, upon their deaths, neither Erin nor David left a lineal descendant. As such, Appellee maintains that the contingent gifts lapsed and that all remaining interests in the Trust's assets flowed to her under Article 5.10 of the Trust.[3]

¶15 Appellant claims that because Erin and David were alive at the time of Settlor's death their remainder interests became fully vested and could not lapse. Appellant urges that when Erin and David died, their interests passed to their respective estates, and that she is the ultimate taker of the interests.

¶16 The Court of Civil Appeals agreed with Appellant and found that Erin and David's "heirs" should receive their "shares as representatives of their deceased ancestor." We would agree with this decision if Erin and David had left lineal descendants as required by the Trust term "per stirpes," but they did not. David was not an ancestor of Appellant. The Court of Civil Appeals' opinion erroneously disregards the meaning of the term "per stirpes" and, instead, allows for a right of representation by heirs in general, without regard to the lineage of the taker.

¶17 The Latin term "per stirpes" means "by roots or stocks" and is a method of dividing an estate where the gift is "[p]roportionately divided between beneficiaries according to their deceased ancestor's share." Black's Law Dictionary (10th Ed. 2014). The term comes from the Latin word "stirps" which references a "branch of a family" or "a line of descent." Black's Law Dictionary (10th Ed. 2014). The phrase "lineal descendant" is defined to mean "[a] blood relative in the direct line of descent. Children, grandchildren, and great-grandchildren are lineal descendants. Black's Law Dictionary, (10th Ed. 2014). Spouses are neither blood relatives nor lineal descendants of each other.

¶18 Appellee argues that the Settlor intended the Trust principal to go to her, as his widow, rather than the widow of his grandson. In support, Appellee points to Trust Article 5.10 which provides that where the Trust is terminated under certain circumstances, none of which currently exist here, then the remaining assets of the Trust are to flow to the beneficiary then entitled to the Trust's income, which is currently Appellee. Appellee also points out that the Trust provides for any undistributed income to be disbursed to her estate upon her death. We agree that there is evidence within the four corners of the Settlor's Trust that he would desire his remaining assets to be disbursed to Appellee or her estate. Matter of the Estate of Hixon, 1985 OK 18, ¶ 5, 715 P.2d 1087, 1089-1090. See also 84 O.S.2011, §§ 151 ("A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible.") and 84 O.S.2011, §§ 152 ("In case of uncertainty, arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations.").

¶19 Where a trust specifically makes the distribution of a bequest per stirpes, we find that the spouse of a devisee is not a lineal descendant of the devisee and is ineligible to take under a "per stirpes" method of distribution. Because Erin and David died leaving no lineal descendants, their interests lapsed and the Trust principal shall pass, pursuant to the Trust, to the beneficiary of the Trust income. Accordingly, the trial court's decision is affirmed.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF THE COURT OF CIVIL APPEALS VACATED;
JUDGMENT OF THE DISTRICT COURT AFFIRMED.

CONCUR: COMBS, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, and TAYLOR, JJ.

DISSENT: REIF, C.J., COLBERT and GURICH (by separate writing), JJ.

FOOTNOTES

[1] The Trust provided:

5.02 Disposition if Settlor's Spouse Survives Settlor. If the Settlor's spouse shall survive the Settlor, the Trustee shall divide the balance of the Trust Fund into two (2) separate shares (hereinafter referred to as "Part A" and "Part B") in the following manner:

(a) Part A. Part A shall consist of an amount of property equal to the largest amount that can pass free of federal estate tax..Part A shall be held, administered and distributed in accordance with the provisions of Article 5.04 hereof.

(b) Part B. Part B (hereinafter referred to as the "Carolyn Ann Collins Dooley Trust") shall consist of all of the remaining assets of the Trust Fund and shall be held, administered and distributed in accordance with the provisions of Article 5.05 hereof.

[2] Appellant maintains she did not receive notice of such appointments.

[3] Article 5.10 of the Trust provides as follows: "Duration of Trust. Notwithstanding any other provision contained in the Agreement, a trust created herein shall terminate upon the earlier of: (a) the date on which all trust assets have been distributed as provided hereinabove; (b) the date which is twenty-one (21) years after the death of the survivor of any beneficiary in being at the date of the Settlor's death; or (c) the end of the latest time permitted by any rule against perpetuities or remote vesting, or any other law, applicable to such trust. Upon termination of any trust created herein pursuant to clause (b) or (c) of the preceding sentence, all remaining assets of such trust shall be distributed to those persons then entitled to the income from such trust in the proportion that such income is distributable, or if the income is distributable among a class of beneficiaries in the discretion of the Trustee, then equally to the members of such class, regardless of the age which any distribute otherwise entitled shall have attained.

GURICH, J., with whom REIF, C.J., and COLBERT, J. join dissenting:

¶1 I must respectfully dissent to the majority decision in the above-styled matter. The majority opinion concludes that the remainder interests of settlor's grandchildren, Erin and David O'Donoghue, were contingent and unvested. Thus, according to the holding, their interests in the trust lapsed when both predeceased settlor's surviving spouse, Carolyn Dooley. Yet, according to the unambiguous language of the trust instrument, Erin or David O'Donoghue's remainder interests were not conditioned on survival; each interest vested immediately upon the settlor's death. Both Oklahoma statutes and our jurisprudence unequivocally provide that remainder interests vest upon the death of a grantor unless a will or trust clearly state otherwise.

¶2 Further, the intent of the settlor in this case was to create a Qualified Terminable Interest Property (QTIP) trust which passed only an income interest to Carolyn Dooley. The existence of QTIP language in the trust instrument is clear evidence the settlor never intended Carolyn Dooley to possess any interest in the trust principal. The purpose of a QTIP trust is to afford a grantor's estate with a significant tax benefit, while still providing the surviving spouse with income for life and maintaining control of the estate's ultimate disposition.

The interests of David O'Donoghue and Erin O'Donoghue became vested on the date of settlor's death.

¶3 Future interests in property may be either contingent or vested. A remainder is vested when the interest is (1) given to an ascertained person (i.e., Erin and David Donoghue); and (2) is free from any condition precedent. Conville v. Bakke, 1964 OK 111, ¶ 33, 400 P.2d 179, 188-189; see also Jesse Dukeminier, James E. Krier, Gregory S. Alexander, Michael H. Schill, Property, 225 (6th ed. 2006).[1] The following narrative clearly demonstrates that Erin and David O'Donoghue's interests in the David L. Dooley QTIP trust were fully vested on the death of settlor:

Whether, in any particular case, a remainder is contingent or vested depends on the construction of the language used, as creating a mere possibility of an estate, or as creating an estate. Thus, a transfer of property to A for life, to B for life, and remainder to C vests on the creation of the interest and goes to C, whether or not C is living when the property vests in his possession, as, in order to change such result, there must be a specific reference in the creating instrument indicating that the remainderman must survive the life tenants in order to take.

2 Tiffany Real Property § 323, Westlaw (database updated 2015) (emphasis added).

¶4 We have previously said when a will and trust are executed simultaneously, with each referencing the other, they reflect "one instrument and a scheme of testamentary disposition." Miller v. First Nat. Bank & Trust Co., 1981 OK 133, ¶ 9, 637 P.2d 75, 77 (emphasis added); see also, Black's Law Dictionary (10th ed. 2014) (defining testamentary disposition as "[a] disposition to take effect upon the death of the person making it, who retains substantially entire control of the property until death.") Both the will and trust were executed contemporaneously by David Dooley and are part of one intertwined testamentary scheme. In Oklahoma, testamentary transfers are presumed to vest upon the death of a grantor unless specific language in the will or trust makes the gift conditional. 84 O.S. 2001 § 175 ("[t]estamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."); Matter of Estate of Westfahl, 1983 OK 119, ¶ 4, 674 P.2d 21, 24. Once vested, a testamentary disposition cannot be "divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose." 84 O.S. 2001 § 176.

¶5 In the present case, paragraph 5.04 in the Dooley trust placed no preconditions on the gifts to the grantor's grandchildren David and Erin. For more than one-hundred years this Court has adhered to the fundamental precept that testamentary gifts are presumed to vest immediately upon the death of the grantor. The Court of Civil Appeals correctly determined that both David and Erin O'Donoghue's remainder interests vested upon the death of the grantor, David Dooley. In reaching their decision, COCA relied on our decision in Moore v. McAlester, 1967 OK 100, 428 P.2d 266. In Moore, 1967 OK 100, ¶¶¶ 31-32, 428 P.2d at 271, this Court found that two sons who died before their sister were not deprived of their interest in their father's estate. This Court held that on the death of their father, both sons had vested interests which could not be "divested by their subsequent deaths before the death of [their sister]." Id; see also Riddle v. Jay, 1960 OK 223, ¶ 13, 356 P.2d 1074, 1077 (holding remainder interest which followed life estate was fully vested, authorizing remainderman to convey her interest by deed); Dannenburg v. Dannenburg, 1953 OK 201, ¶ 32, 271 P.2d 345, 352 (concluding son's share of mother's estate vested on her death and did not lapse despite dying before distribution); Porter v. Porter, 1923 OK 1184, ¶ 7, 222 P. 971, 973 (holding remainder interests of children vested immediately upon father's death).

¶6 The majority looks to the phrase per stirpes to conclude the gifts to Erin and David O'Donoghue were not vested. However, the phrase per stirpes did not impose any limitation on the gifts; rather the phrase merely explained that should either or both die before receipt of their gift, the money or property would inure to the benefit of their heirs by representation. Neither Erin nor David were required by the grantor to have lineal descendants to receive the gifts. More importantly, according to our statutes, any references to heirs, issue, descendents, etc. are not deemed terms of condition or limitation:

A testamentary disposition to "heirs," "relations," "nearest relations," "representatives," "legal representatives," or "personal representatives," or "family," "issue," "descendants," "nearest," or "next of kin," of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person according to the provisions of the article on succession in this chapter.

84 O.S. 2001 § 168.

Settlor did not intend for Carolyn Dooley to have any interest in the residue of the QTIP trust. 

¶7 The trust instrument executed by settlor provided for the creation of two separate trusts upon his death. The first trust was funded with the amount of money which could be transferred free from estate and gift tax by utilizing the federal unified tax credit and state death tax credit. The second, a QTIP trust, is the one at issue in the present case.

¶8 Section 5.05(e) of the David L. Dooley Trust Agreement provided:

It is the intention of the Settlor that [the Carolyn Ann Dooley Trust] is to be qualified terminable interest property [QTIP], as defined in Section 2056(b)(7)(B)(v) [sic] of the [IRC], and it shall be held, administered and distributed accordingly. Accordingly, the Trustee is hereby directed to make the election provided in Section 2056(b)(7)(B)(v) of the [IRC], as amended, and to treat all assets of this Trust as qualified terminable interest property [QTIP] for the purpose of qualifying for the marital deduction allowable in determining the federal estate tax upon Settlor's Estate. (emphasis added).[2]

A QTIP trust allows a grantor's estate to benefit from the unlimited marital deduction, while still maintaining control of the estate's ultimate disposition. The QTIP affords the surviving spouse with income for life but allows the decedent to control disposition of the residuary estate on the death of the surviving spouse. IRC § 2056(b)(7)(B).[3] QTIP trusts are often utilized in second marriages; situations involving a grantor who wishes to continue providing care for his or her surviving spouse, but desires to leave his or her estate to children from a prior marriage. Diane Hubbard Kennedy, 26 Ind. Prac., Anderson's Wills, Trusts & Est. Plan. § 3:117 (2015-2016 ed.) ("The QTIP trust is a significant tool in many estate plans involving second or third marriage situations. This type of a bequest solves the problem where a spouse wishes to take care of his second surviving spouse, but wants to make sure that after the spouse passes away that the assets revert to the children of a prior marriage.").[4] As the Fifth Circuit Court of Appeals explained in Estate of Clayton v. C.I.R., 976 F.2d 1486, 1492 (5th Cir. 1992), by enacting the QTIP provisions, a testator could qualify for the marital deduction while furnishing "maximum financial benefits and security for the surviving spouse" and eliminate "the risk that the survivor might waste the property or appoint it to successors other than the children of the testator's first marriage." In the Estate of Shelfer v. C.I.R., 86 F.3d 1045, 1049 (11th Cir. 1996) the Eleventh Circuit Court of Appeals summarized the purpose for establishing the QTIP:

Congress became increasingly concerned with the difficult choice facing those in second marriages, who could either provide for their spouse to the possible detriment of the children of a prior marriage or risk under-endowing their spouse to provide directly for the children. In the Economic Recovery Act of 1981, Congress addressed this problem by creating the QTIP exception to the terminable property interest rule. According to the House of Representatives Report, the QTIP trust was designed to prevent a decedent from being forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children. (emphasis added, citations and quotations omitted).

¶9 As the majority notes, the paramount consideration when construing a trust instrument is the intent of the settlor. In re Will of Dimick, 1975 OK 10, ¶ 10, 531 P.2d 1027, 1030.[5] Further, a trust document should be interpreted in favor of the intended beneficiaries. Trust Co. of Okla, v. State ex rel. Dept. of Human Servs., 1991 OK 133, ¶ 13, 825 P.2d 1295, 1303. The plain language of the trust in this case reflects the settlor's clear intent to have the Carolyn Dooley Trust treated as a QTIP. Accordingly, the settlor intended the remainder interests of Erin and David O'Donoghue to vest immediately upon his death.

Conclusion

¶10 The primary goal of this Court is to interpret a will or trust in a manner which gives effect to the decedent's intentions. David L. Dooley did not intend to leave the residue of his estate to Carolyn Dooley or her heirs. He could have easily done so by either (1) allowing Carolyn Dooley to withdraw principal from the QTIP trust; or (2) including language which vested the residue in Carolyn Dooley if Erin and David O'Donoghue both were predeceased. Paragraphs 5.04(a) -- (c) included specific terms which caused gifts to Susan Haggard, Janet Haggard and David Haggard to lapse should they predecease the settlor. Had settlor intended the O'Donoghue bequests to lapse, such language would have been included in the terms of the trust.

¶11 Accordingly, the COCA reached the correct conclusion in this case, and that decision should be affirmed.

FOOTNOTES

[1] The following was taken from Property, Chapter 4, Future Interests:

A remainder may be indefeasibly vested, meaning that the remainder is certain of becoming possessory in the future and cannot be divested. Thus:

O conveys Blackacre 'to A for life, then to B and her heirs.' B has an indefeasibly vested remainder certain to become possessory upon termination of the life estate. If B dies during A's life, on B's death B's remainder passes to B's [estate, heirs, devisees, etc]. . .(emphasis added).

[2] Rec. on Acc. App., Doc. 2, Ex. A.

[3] IRC § 2056(b)(7)(B) reads:

(B) Qualified terminable interest property defined.--For purposes of this paragraph--

(i) In general.--The term "qualified terminable interest property" means property--

(I) which passes from the decedent,

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

To satisfy the "qualifying income interest for life test," the following must be met: (1) all income must be paid to the surviving spouse at least annually; and (2) no person, other than the surviving spouse may possess a power of appointment over the property. IRC § 2056(b)(7)(B)(ii). Paragraph 5.05(e) of the David L. Dooley Trust did not contain a power of appointment; however, this does not preclude the property from meeting the QTIP requirements. see Myron Kove, Amy Morris Hess, George Gleason Bogert, George Taylor Bogert, Bogert's Trusts And Trustees § 275.10, n. 14 (2015).

[4] See also Henry J. Lischer, Jr., Donald J. Malouf, Alex E. Nakos, Contributing Author Diann M. Addison, The Marital Fund----Choices As To The Marital Deduction Bequest----Qualified Terminable Interest Property ("Qtip") Trust, 16A West's Legal Forms, Estate Planning § 11.7, Westlaw (database updated 2015):

Because the QTIP form of marital bequest allows the testator spouse to control disposition of the remainder interest after the death of the surviving spouse, it is useful in a variety of situations in which testators previously were put to a difficult choice. A client in a second marriage is a good example of a situation in which the QTIP marital bequest is useful. The client might want to pay as little tax as possible at death in order to leave intact the family property for the purpose of supporting the surviving second spouse. At the same time, however, one or both of the spouses might have children by a prior marriage. A QTIP bequest could provide the surviving spouse with an income interest for life, with the remainder going to the children of the decedent's prior marriage.

[5] Interestingly, the Dimick case revolved around a sole issue, namely: whether the settlor's daughter possessed a vested interest in a trust, which was "not subject to being divested by her subsequent death prior to actual distribution." Id. ¶ 9, 531 P.2d at 1030. This Court concluded a deceased daughter's share of the trust was vested, despite language which provided for lapsing of the gift should a beneficiary die "prior to the full and complete distribution of all of the corpus of the trust estate herein created." Id. ¶ 1, 531 P.2d at 1029.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 133, 825 P.2d 1295, 62 OBJ 3763, Trust Co. of Oklahoma v. State ex rel. Dept. of Human Services
Discussed
 1953 OK 201, 271 P.2d 345, DANNENBURG v. DANNENBURG
Discussed
 1960 OK 223, 356 P.2d 1074, RIDDLE v. JAY
Discussed
 1964 OK 111, 400 P.2d 179, CONVILLE v. BAKKE
Discussed
 1967 OK 100, 428 P.2d 266, MOORE v. McALESTER
Discussed at Length
 1923 OK 1184, 222 P. 971, 97 Okla. 231, PORTER v. PORTER
Discussed
 1975 OK 10, 531 P.2d 1027, IN RE WILL OF DIMICK
Discussed at Length
 1980 OK 8, 609 P.2d 752, Tayrien's Estate, Matter of
Discussed
 1981 OK 133, 637 P.2d 75, Miller v. First Nat. Bank & Trust Co.
Discussed
 1998 OK 21, 956 P.2d 879, 69 OBJ 999, HULETT v. FIRST NATIONAL BANK & TRUST CO. IN CLINTON
Discussed
 1983 OK 119, 674 P.2d 21, Estate of Westfahl, Matter of
Discussed
 1985 OK 18, 715 P.2d 1087, 56 OBJ 527, Estate of Hixon, Matter of
Discussed
Title 84. Wills and Succession
 Cite
Name
Level

 84 O.S. 151, Will Construed According to Testator's Intent
Cited
 84 O.S. 152, Ascertaining the Testator's Intent
Cited
 84 O.S. 168, Interpretation and Effect of Certain Terms as Words of Donation, Not Limitation-Heirs, Relations, Issue, etc.
Cited
 84 O.S. 175, Vesting of Dispositions - Presumption
Cited
 84 O.S. 176, Vesting of Testamentary Dispositions - Divestment
Cited