16 F.3d 417
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Debra Sue PAHDOPONY, Petitioner-Appellant,
v.
UNITED STATES DEPARTMENT OF THE INTERIOR, Respondent-Appellee.
 No. 93-6021.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 20, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SETH, BARRETT, and McKAY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Appellant, Debra Sue Pahdopony, seeks review under the Administrative Procedure Act, 5 U.S.C. 701-706, of the Secretary of the Interior's decision that the phrase "heirs of the body" as used in the will of Frank (Tate) Nevaquaya Tooahimpah, a Comanche Indian, meant that no adopted children were to be included in those taking after a life estate. The district court affirmed the Secretary's decision by order entered December 16, 1992, and Ms. Pahdopony appealed. We have jurisdiction pursuant to 28 U.S.C. 1291.
 
 
 3
 Mr.Tooahimpah (the Testator) executed his will in May 1965 and died in July 1966. At the time of his death, he owned a substantial interest in restricted Indian lands located in Oklahoma, all of which were in an area administered by the Anadarko Agency of the Bureau of Indian Affairs. Adult Indians make testamentary dispositions of their interest in restricted lands in accordance with regulations promulgated by the Department of Interior (DOI), subject to the approval of the Secretary of the Interior. 25 U.S.C. 373; see also 43 C.F.R. 4.200-.340. Indian wills are probated in the DOI and not in state courts or under state procedure. The construction of Indian wills is governed by federal law. Estate of Garcia, 14 IBIA 106, 1986 WL 80101 at * 1 (1986).
 
 
 4
 The Testator's will was admitted to probate before the DOI and was approved on February 20, 1967. The will was drafted by a DOI employee using a standard DOI form. The Testator devised his interest in described tracts of land to each of the Testator's seven children and to his four grandchildren. The devises to the Testator's children, including the one at issue here, were to the devisee "for her [or his] lifetime, with remainder to the heirs of her [or his] body." Appellant's App. at 53. The devises to the Testator's grandchildren were in fee simple.
 
 
 5
 Appellant was born on September 16, 1954, to Geneva Woomavoyah Navarro, one of the Testator's grandchildren and a devisee under his will. From the age of two Appellant lived with and was raised by Lois Pahdopony, one of the Testator's daughters. In 1970, after Testator's death, Lois formally adopted Appellant under the laws of Oklahoma.
 
 
 6
 In 1983, Lois and her sisters Esther and Hattie sought approval from the Anadarko Area Director of consent agreements each had entered into with the people she believed to be the heirs of her body. Appellant executed a consent agreement with Lois in "[her] capacity as a living heir of the body of [her] mother and consequently as an owner of a remainder interest in the [described] property." Appellant's App. at 49. The purpose of the agreements was to allow the three life tenants to receive royalties from oil and gas production on the lands in which they had an interest. The Area Director submitted the matter to the administrative law judge (ALJ) with a memo indicating that he thought the consent agreements should be approved if the ALJ could determine the identity of the remaindermen of the three life estates.
 
 
 7
 The ALJ construed the submission as an application to reopen the Testator's estate. He denied the petition to reopen on the ground that the identity of the remaindermen of each life estate could not be determined until the life tenant died. In so ruling, the ALJ said:
 
 
 8
 The term "heirs of her body" or "heirs of the body" is a term of art, ordinarily meaning a named person's lineal descendents who can take under the statutes excluding a spouse. An "heir" is one who inherits by law, Moffett v. Co[n]ley, 163 P. 118 (Okla. 191; In re Trust Estate of Kanoa, 393 P.2d 753 (Hawaii 1964).
 
 
 9
 Appellant's App. at 42. Lois and her sisters appealed the ALJ's ruling to the Interior Board of Indian Affairs (IBIA), which affirmed the ALJ's ruling that the heirs of the bodies of the respective life tenants could not be determined until the life tenants died.
 
 
 10
 Lois Pahdopony died on April 26, 1988, survived by her husband, who subsequently died, and by Appellant. In March 1990, the ALJ reopened the Testator's estate to determine the heirs of the body of Lois Pahdopony. Appellant claimed that she was an heir of Lois' body. The ALJ ruled that "heirs of the body" was a legal and technical phrase that must be given its technical meaning "absent a clear showing the testator intended a different meaning." Appellant's App. at 19. The ALJ concluded that when the Testator executed his will, the technical meaning of the phrase "heirs of the body" under Oklahoma law excluded spouses and adopted children. The ALJ further concluded that the literal meaning of the term excludes adopted children: "Although the term or word heir' may by virtue of the adoption statutes include children by adoption, the words of the body' limit it to those born of the person referred to." Id. Therefore, the ALJ ruled that Appellant could not inherit Lois' interest in the property devised by the Testator's will. Appellant appealed the ALJ's decision to the IBIA, which affirmed the ALJ's ruling that the term "heirs of the body" did not include adopted children.
 
 
 11
 Appellant sought review of the IBIA's decision--which constituted the final decision of the Secretary--in the district court. The district court affirmed the Secretary's decision. The court noted that at the time the Testator executed the will and at the time he died no federal court had addressed whether adopted children were included within the term "heirs of the body." A number of state courts had considered the matter, however, and the district court determined that the prevailing position of the state courts in the mid-1960s was to construe the phrase to exclude adopted children. The court further concluded that in using the phrase "heirs of the body," the Testator here intended "to limit his devise to biological descendents." Appellant's App. at 9. This reference to "biological descendents" and Testator's intent is significant in our analysis.
 
 
 12
 We review the Secretary's decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is "unsupported by substantial evidence." 5 U.S.C. 706(2)(A), (E); Akers v. Hodel, 871 F.2d 924, 926 n. 1 (10th Cir.1989).
 
 
 13
 The parties agree that the interpretation of Indian wills is governed by federal law. Federal courts have set forth some basic principles governing the interpretation of wills. First and foremost is the principle that the intent of the testator governs the disposition of the testator's estate. Estate of Bruning v. Commissioner, 888 F.2d 657, 659 (10th Cir.1989) (per curiam). That intent is to be determined from the entire will, as of the time the will was executed. Id.
 
 
 14
 If the will is examined under Oklahoma law alone, without considering the intent of the decedent, the result is obvious. At the time the will was executed, the technical meaning in Oklahoma of "heirs of the body" excluded adopted children. Moore v. McAlester, 428 P.2d 266 (Okla.1967). However, since this will is subject to DOI approval, federal law governs the analysis, if a legal analysis is necessary. But the Testator's intent is crucial in determining whether "heirs of the body" excludes Appellant.
 
 
 15
 To arrive at the intent of the Testator as to the meaning of the term "heirs of her body," it is necessary to consider the testimony of a witness to the will at the hearing on the will held in December of 1966. This witness, George Asepermy, a cousin of the Testator, testified in part:
 
 
 16
 Q. Now I show you this will that I read a few moments ago and ask you if your signature appears on that will?
 
 
 17
 A. Yes.
 
 
 18
 Q. That will was made by Mr. Haight in the Field Solicitor's Office, is that correct?
 
 
 19
 A. Yes.
 
 
 20
 Q. Was it made in his office?
 
 
 21
 A. Right in his office.
 
 
 22
 Q. Now were you present when Frank discussed with Mr. Haight what he wanted in the will?
 
 
 23
 A. Yes, I was the interpreter.
 
 
 24
 Q. He didn't speak in English?
 
 
 25
 A. Well, he could but....
 
 
 26
 Q. He preferred to deal through an interpreter on something like this?
 
 
 27
 A. Yes.
 
 
 28
 Q. And he told you in Comanche what he wanted?
 
 
 29
 A. Yes.
 
 
 30
 Q. And you translated that into English and told Mr. Haight?
 
 
 31
 A. Yes.
 
 
 32
 Q. Now after that was done this will was typed up, is that correct?
 
 
 33
 A. Yes.
 
 
 34
 Q. Now did you read it back to him?
 
 
 35
 A. Yes.
 
 
 36
 Q. Did the instrument as it now appears, accurately reflect what he wanted done at that time?
 
 
 37
 A. Yes.
 
 
 38
 Q. And you were satisfied that he understood it?
 
 
 39
 A. Yes, he understood English.
 
 
 40
 Q. He understood it but just as a double check?
 
 
 41
 A. Yes.
 
 
 42
 Q. And at the time that he made this will was his mind clear and alert?
 
 
 43
 A. Yes.
 
 
 44
 Q. He knew what he was doing?
 
 
 45
 A. Yes.
 
 
 46
 Q. He knew the members of his family?
 
 
 47
 A. Yes.
 
 
 48
 Q. And he knew the property that he owned?
 
 
 49
 A. Yes.
 
 
 50
 Q. And he knew what he wanted each of them to have?
 
 
 51
 A. Yes.
 
 
 52
 Q. Now he did indicate at that time that this was to be his last will and testament?
 
 
 53
 A. Yes.
 
 
 54
 This quotation is significant in that it describes what took place preparatory to the actual drafting of the will. This indicates no consultation between the Testator and Mr. Haight at the Agency office, and no explanations. Thus:
 
 
 55
 Q. And he told you in Comanche what he wanted?
 
 
 56
 A. Yes.
 
 
 57
 Q. And you translated that into English and told Mr. Haight?
 
 
 58
 A. Yes.
 
 
 59
 Q. Now after that was done this will was typed up, is that correct?
 
 
 60
 A. Yes.
 
 
 61
 Q. Now did you read it back to him?
 
 
 62
 The person who posed the questions in a previous question (quoted above) used the word "discussion", but the witness described the events and the sequence. The Testator understood and read English. The will was read back to the Testator, in English, and he understood it.
 
 
 63
 In view of this testimony, and with no testimony by Mr. Haight at the hearing, it is preferable to assume that the Testator as a practical matter understood "heirs of the body" of Lois to mean her natural "of the body" children--her biological "of the body" offspring. This was the obvious practical meaning of the term. This result does not depend on a double assumption first that Mr. Haight explained the meaning of a legal term, when the testimony shows no explanation, although it purports to describe the events preliminary to the drafting of the will; and the second assumption that he explained the term in accordance with the Oklahoma state court decisions which he may or may not have been familiar with.
 
 
 64
 This practical meaning, the "bodily" meaning, we can safely conclude would survive a translation. But the testimony shows that no translation was really needed. This analysis and conclusion, again, does not require the assumption that an explanation was made, which appears to be contrary to the record, and that it was of holdings in Oklahoma state court decisions. Instead, the term should not be considered a complex legal term under English common law, federal law, or Oklahoma decisions, but as a practical biological term--children born of Lois. "Heirs" alone may need some legal analysis, but when "of the body" is added it is brought down to earth. If it makes any difference, all that need be said is that the practical meaning is not contrary to federal law and the common law, nor the Oklahoma decisions. See Hurt v. Noble, 817 P.2d 744 (Okla.App.1991); Hines v. First National Bank & Trust Co., 705 P.2d 1078 (Okla.1985); Moore v. McAlester, 428 P.2d 266 (Okla.1967).
 
 
 65
 We thus generally agree with the trial court's conclusion that by using the term "heirs of the body" the Testator intended "to limit his devise to biological descendents."
 
 
 66
 We have considered what the parties refer to as the Anadarko Memorandum issued by the Agency in January 1984. This describes the prevailing view why the creation of life estates in Indian wills is a preferred device in devising real property interests to exclude in-laws. We conclude that it is not applicable nor persuasive here although it is apparent that the description of remaindermen is an integral part of the creation of a life estate.
 
 
 67
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. --- F.R.D. ---